**NATIONAL KIDNEY PATIENTS ASS'N, et al., Appellees,**

v.

**Louis W. SULLIVAN, M.D., et al., Appellants.**

**Nos. 89–5039, 89–5040.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 4, 1989.

Decided April 24, 1990.

John Vanderstar, with whom Ellen J. Flannery and Bruce N. Kuhlik, Washington, D.C., were on the brief, for appellant, Blue Cross Blue Shield of Florida, Inc.

Jeffrica Jenkins Lee, Atty., with whom Jay B. Stephens, U.S. Atty., Stuart E. Schiffer, Acting Asst. Atty. Gen., and John F. Cordes, Atty., Washington, D.C., were on the brief, for appellants, Louis W. Sullivan, M.D., and the Dept. of Health and Human Services.

Nathan Lewin, with whom Stevan E. Bunnell, Washington, D.C., was on the brief, for appellees.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and OBERDORFER, District Judge.[*]

Opinion for the Court filed PER CURIAM.

PER CURIAM:

This case arises from a dispute over the administration of Medicare Part B payments for renal dialysis treatment. Plaintiffs below, an association of dialysis patients and dialysis suppliers, sought to enjoin the Department of Health and Human Services ("HHS") and a local insurance carrier, Blue Cross and Blue Shield of Florida, Inc. ("Blue Cross"), from reducing medicare reimbursements for home dialysis treatment to the level set for clinical treatment. The district court granted the plaintiffs a preliminary injunction. The court found that plaintiffs would suffer irreparable injury without a preliminary injunction and ruled that they would likely prevail on each of their independent claims for permanent injunctive relief. HHS and Blue Cross appealed this decision on the ground that the preliminary injunction was improvidently granted. For the reasons stated below, we find the appeal is moot. Accordingly, we vacate the injunction and remand the case to the district court.

## I. BACKGROUND

End Stage Renal Disease ("ESRD") is a permanent breakdown of the kidneys' disposal function which, without regular dialysis treatment, will cause a patient to die within a matter of days. The dialysis necessary to sustain an ESRD patient's life, however, is extremely expensive, costing over $20,000 per year. To help defray these costs, Congress in 1972 extended Medicare Part B coverage to dialysis treatment for ESRD patients. 42 U.S.C. § 1395rr.

---

[*] The Honorable Louis F. Oberdorfer of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 292(a) (1982).

Congress established two methods of reimbursement for patients who require dialysis treatment—one calculated for clinics ("Method I") and the other calculated for home dialysis ("Method II"). Under Method I, the Health Care Financing Administration ("HCFA")—which is responsible for administering Medicare payments for dialysis beneficiaries—and HHS promulgate a "composite rate" based on the average regional costs of dialysis treatment for patients receiving care in dialysis clinics. 42 U.S.C. § 1395rr (1989). Method I reimbursement applies only where a patient receives dialysis treatment through a clinic (including home dialysis provided by clinical staff). By contrast, Method II reimburses a patient for the actual cost of purchasing dialysis equipment and supplies for home use up to a "reasonable amount." 42 U.S.C. § 1395rr(b)(1)(B) (1989).

The Medicare statute authorizes HCFA to contract with private insurers ("carriers") who handle the administrative details of Part B reimbursement. The carriers determine, *inter alia,* whether a service or item is covered and establish the reasonable charge that may be paid for these services and items. 42 U.S.C. § 1395u(a) (1989); 42 C.F.R. §§ 405.803, 421.200 (1988). In 1985, HHS amended its regulations to permit carriers to modify "inherently unreasonable" charges. 42 C.F.R. § 405.502(a)(7) (1988).

In 1986, HCFA issued Transmittal 1237 which directed carriers to exercise their power to modify Part B charges that are inherently unreasonable or to explain why current levels were reasonable. The Transmittal stated that many carriers were permitting charges in excess of the composite rate (Method I). It suggested that any charge in excess of the Method I rate was suspect, since Method I rates cover expenses such as staff assistance that are not included under Method II.

In response to the Transmittal, appellee Blue Cross determined that its current Method II rate for home dialysis suppliers was "inherently unreasonable" and proposed to reduce its Method II payment ceiling to $1,625 per month for home hemo-

dialysis, approximately the same rate as Method I. As a result, appellee, Home Intensive Care ("HIC"), a home hemodialysis provider, would have its yearly reimbursement for ESRD patients reduced from $37 million to $19.5 million.

In their suit for preliminary and permanent injunctive relief, HIC and the other appellees alleged that Blue Cross' reduction of Method II rates to the Method I level was both substantively impermissible and procedurally defective. Specifically, they alleged that: (1) they had a statutory right to have Method II payments calculated independently of the Method I option; (2) Blue Cross lacked authority to make inherent unreasonableness determinations because that power had never been subjected to proper notice and comment prior to its promulgation; (3) the determination that Method I and Method II rates should be the same was not based upon actual expenses and hence was arbitrary and capricious; and (4) the Transmittal was not properly subjected to notice and comment proceedings.

The district court found that the plaintiffs were likely to succeed on each of these claims, and accordingly it issued a preliminary injunction to prevent any irreparable injury that might arise from enforcement of Blue Cross' action. The appellants challenged the district court's decision on the grounds that the Transmittal was not a change in substantive policy with all the attendant procedural protections; HCFA and Blue Cross did not act arbitrarily in using Method I as a benchmark; and the district court lacked jurisdiction over this action.

While our decision in this case was still pending, Congress enacted the Omnibus Budget Reconciliation Act of 1989 ("OBRA"). OBRA Section 6203(b)(1), which amends 42 U.S.C. § 1395rr(b)(7), accomplishes precisely what was enjoined by the trial court; it limits the amount of payment for hemodialysis equipment and supplies under Method II to the composite Method I rate received by hospital-based facilities.

## II. MOOTNESS

This court's first task on review is to determine whether OBRA Section 6203(b)(1) has mooted the issue raised on appeal. *Brown v. Chote,* 411 U.S. 452, 457, 93 S.Ct. 1732, 1735, 36 L.Ed.2d 420 (1973). The sole issue on appeal to this court is whether the district court abused its discretion in granting appellees' motion for a preliminary injunction. Both parties concede, however, that that injunction is no longer effective. Under OBRA Section 6203(b)(1), HHS may calculate home-dialysis reimbursements in precisely the manner previously prohibited by the district court's injunction.

The scope of our review of a preliminary injunction that has expired while on appeal is controlled by the Supreme Court's decision in *University of Texas v. Camenisch,* 451 U.S. 390, 394–95, 101 S.Ct. 1830, 1833–34, 68 L.Ed.2d 175 (1980). In *Camenisch,* a deaf graduate student obtained a preliminary injunction which directed the University of Texas to appoint a sign-language interpreter for him. The University obeyed the injunction, and while its appeal was pending, Camenisch graduated. The Supreme Court determined that the appeal was moot. The Court observed that the issue raised before the appeals court— namely, whether the District Court abused its discretion in issuing a preliminary injunction—was no longer a live controversy "because the terms of the injunction ... ha[d] been fully and irrevocably carried out." 451 U.S. at 398, 101 S.Ct. at 1835.

Our situation is indistinguishable from that in *Camenisch.* The injunction challenged by appellants enjoined HCFA from imposing its new reimbursement rules, at least until Congress intervened. When Congress enacted OBRA on February 1 of this year, the terms of the preliminary injunction were "fully and irrevocably carried out." The relief sought and granted by the district court, then, expired on its own terms.

Appellants nevertheless contend that the *case* is not moot because a live issue remains about whether HIC or HHS should bear the cost of payments made in excess of the Method I rates while the injunction was in effect. A nearly identical claim was expressly rejected by the *Camenisch* Court. The Court cautioned that an appeals court may consider only the *issue* raised before it, and that the question of who should bear the cost of a now-moot injunction was "significantly different" from the issue of whether the injunction was improvidently granted. 451 U.S. at 393, 101 S.Ct. at 1833. Accordingly, in *Camenisch,* the Court remanded the case to the district court for a trial on the merits to determine who should ultimately bear the cost of the interpreter. *Id.* at 398, 101 S.Ct. at 1835.

Appellants' other attempts to breathe life into their perished appeal are equally unavailing. The fact that the federal defendants base their appeal in part on a challenge to the district court's jurisdiction cannot save their claim. An appellate court may only review final, appealable orders of a district court. *Catlin v. United States,* 324 U.S. 229, 236, 65 S.Ct. 631, 635, 89 L.Ed. 911 (1945); *Save the Bay, Inc. v. United States Army,* 639 F.2d 1100, 1103 (5th Cir.1981). As noted, the district court's order must be vacated and thus is no longer susceptible to appellate review. The threshold issue of subject-matter jurisdiction may be determined only after a final judgment on the merits is presented to us.

Likewise, appellants' observation that HIC may still submit claims based on services rendered during the pre-OBRA period does not resuscitate their appeal. The injunction challenged here involved only the incurrence of reimbursable expenses; all such expenses had been incurred at the time OBRA was enacted. As we noted, the recoupment of any reimbursement for those expenses—or actions to avoid payment of outstanding reimbursable expenses—was not presented on appeal. *See Camenisch, supra,* 451 U.S. at 394–95, 101 S.Ct. at 1833–34. Those claims must first be determined by the trial court on the merits before they can furnish a basis for appellate review. *Honig v. Students of the California School for the Blind,* 471

U.S. 148, 105 S.Ct. 1820, 85 L.Ed.2d 114 (1985).

### III. CONCLUSION

The only issue presently before us—the correctness of the decision to grant a preliminary injunction—is no longer justiciable. Accordingly, the appeal is dismissed, the judgment of the district court is vacated, and the case is remanded to the trial court for further proceedings. *Honig, supra,* 471 U.S. at 149-50, 105 S.Ct. at 1820–21; *Lewis v. Continental Bank Corp.,* —— U.S. ——, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990).

*So ordered.*