NATIONAL KIDNEY PATIENTS ASSOCIATION, et al., Plaintiffs,

v.

Otis R. BOWEN, Secretary, Department of Health and Human Services, et al., Defendants.

Civ. A. No. 88–3251 SS.

United States District Court, District of Columbia.

Jan. 17, 1991.

Nathan Lewin, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for plaintiffs.

Richard G. Lepley, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This case is now before the Court after a protracted series of proceedings. The plaintiffs filed suit in 1988 seeking to prevent the Health Care Financing Association ("HCFA") from lowering reimbursement rates for certain services covered by Medicare. On December 22, 1988, this Court issued a preliminary order enjoining the rate reduction. The Court of Appeals subsequently vacated the preliminary injunction after Congress passed a law that rendered the injunction moot. The sole issue remaining before the Court is the disposition of a $750,000 surety bond posted by

plaintiff Home Intensive Care, Inc. ("HIC") in connection with the preliminary injunction. Because the injunction was not erroneously granted, and in any event because the balance of equitable factors favors the plaintiffs, the bond will be returned to HIC.

## I. Background

Plaintiffs in this case are individual patients suffering from end stage renal disease, the National Kidney Patients Association, which represents such patients, and HIC, a company that provides at-home renal dialysis treatments to such patients. End stage renal disease—the permanent breakdown of the kidneys' disposal function—is invariably fatal unless the patient receives regular renal dialysis treatments. To help defray the enormous expense of dialysis, Congress in 1972 extended Medicare Part B coverage to dialysis treatments. See 42 U.S.C. § 1395rr. Medicare Part B is administered by HCFA, which is part of the Department of Health and Human Services ("HHS"). HCFA is authorized, however, to contract with private insurers to actually perform reimbursement services. Under 42 C.F.R. § 405.502(a)(7), these private carriers are authorized to reduce a provider's requested reimbursement if it is "inherently unreasonable." Defendants are the Secretary of HHS, the Administrator of HCFA, and one of these private carriers.

The Medicare statute provides two methods for calculating the reimbursement rate for dialysis treatments. Method I is used for treatments in clinics or hospitals. Under Method I, HCFA establishes a "composite rate" based on the average regional cost of dialysis treatments for patients receiving care in clinics. See 42 U.S.C. § 1395rr(b)(3). All clinics within each region receive reimbursement at this composite Method I rate.

Method II is used for dialysis treatments administered in the patient's home. See 42 U.S.C. §§ 1395rr(b)(7). At the time this suit was initiated, Method II called for reimbursement to individual home dialysis patients of the "reasonable" cost of purchasing dialysis equipment and supplies. Historically, Method II provided benefits more generous than those available under Method I.

Most end stage renal disease patients receive dialysis treatments at clinics, which are reimbursed according to Method I. Home dialysis, accompanied by the higher Method II reimbursement rate, has traditionally been provided only to patients with extraordinary medical necessity. In 1985, HIC began to provide home dialysis on a routine commercial basis. While the home treatments provided by HIC were more costly than clinic-based dialysis, HIC was able to use the higher Method II payments to pay for medical technicians and equipment, and still earn a profit. HIC's system became an immediate success. At an evidentiary hearing on plaintiffs' motion for a preliminary injunction, plaintiffs introduced overwhelming evidence that home dialysis is less risky and less disruptive for patients than treatment in clinics, and that home dialysis enables patients to lead more productive lives.

Nonetheless, HCFA disapproved of the HIC system, taking the position that home dialysis is too costly and should be reserved for extraordinary cases. To reduce costs, HCFA issued Transmittal 1237 to Medicare carriers. Transmittal 1237 in effect limited reimbursements for home dialysis treatments to the Method I level, unless special medical circumstances mandated home dialysis. HCFA's stated rationale for this limitation was that all dialysis charges above the Method I level were unreasonable.

Plaintiffs instituted this action to challenge HCFA's issuance of Transmittal 1237 and the carriers' implementation of it. They argued that Transmittal 1237 was arbitrary and capricious, that it was contrary to the Medicare statute, that its issuance suffered from procedural defects, and that the carriers lacked authority to implement it. After an extended evidentiary hearing, this Court on December 22, 1988, entered a preliminary injunction prohibiting HCFA and the carriers "from reducing the rate of reimbursement under Medicare, Part B, Method II for Home Hemodialysis." Upon the defendants' motion,

the Court required HIC to post a surety bond in the amount of $1,000.

Defendants appealed both the preliminary injunction and the bond. In a one-page, *per curiam* order dated December 8, 1989, the Court of Appeals held that the HIC bond was " '[in]sufficient to protect [its] adversary from loss in the event that future proceedings prove that the injunction issued wrongfully' " (quoting *Edgar v. Mite Corp.*, 457 U.S. 624, 649, 102 S.Ct. 2629, 2644, 73 L.Ed.2d 269 (1982) (Stevens, J., concurring)). On remand from the Court of Appeals, this Court set HIC's bond at $750,000.

While defendants' appeal of the preliminary injunction was pending before the Court of Appeals, Congress enacted the Omnibus Budget Reconciliation Act of 1989 ("OBRA"), Pub.L. No. 101–239. Section 6203(b)(1) of this statute amended 42 U.S.C. § 1395rr(b)(7) to provide that Medicare reimbursement for home dialysis treatments "may not exceed the amount ... of the median payment that would have been made under the formula for hospital-based facilities." This provision reduced Method II payments to the Method I level. Congress effected by statute precisely what HCFA had sought to accomplish with its Transmittal 1237. Subsequently, the Court of Appeals dismissed defendants' appeal as moot, vacated the preliminary injunction, and remanded the case to this Court. *National Kidney Patients Association v. Sullivan*, 902 F.2d 51 (D.C.Cir.1990).

## II. Mootness

■ Plaintiffs' complaint is now moot. The enactment of OBRA obviated Transmittal 1237. Plaintiffs' challenge to Transmittal 1237 no longer presents this Court with anything to decide. Plaintiffs' objections to the reimbursement schedule effected by Transmittal 1237 were based on statutory and procedural grounds. Because Congress passed a statute that in effect enacted Transmittal 1237 into law, these objections are no longer tenable. Congress' action has precluded plaintiffs from obtaining the relief they originally sought. Plaintiffs themselves concede that they have no basis upon which to request any future relief. *See Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Summary Judgment* at 2. Plaintiffs' action has been rendered moot and their complaint will be dismissed.

## III. Disposition of Plaintiff's Surety Bond

The dismissal of plaintiffs' complaint leaves one issue remaining in the case: whether the government is entitled to recover from plaintiffs damages for the wrongful issuance of an injunction. Defendants have made a claim for $18 million which they assert represents the amount HCFA was forced to spend on home dialysis reimbursements above the Method I level during the life of the preliminary injunction. Defendants cannot recover damages, however, in excess of the surety bond posted by plaintiffs. *See W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 770, 103 S.Ct. 2177, 2185, 76 L.Ed.2d 298 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."); *Matek v. Murat*, 862 F.2d 720, 733 (9th Cir.1988) ("the limit of damages a party can obtain for wrongful injunction ... is the amount of the bond"). The issue before the Court, then, is the disposition of HIC's $750,000 bond.

### A. The Propriety of the Preliminary Injunction

■ The Court ordered plaintiffs to post a bond pursuant to Fed.R.Civ.Pro. 65(c), which provides:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

*See also Monzillo v. Biller*, 735 F.2d 1456, 1461 (D.C.Cir.1984) ("The purpose of the security requirement [of Rule 65(c) ] is to protect a party from damages suffered if it is later determined that the preliminary

relief was wrongfully granted."). This provision does not entitle defendants to the bond proceeds. The preliminary injunction in this case was not wrongfully granted. Even if it was, equitable considerations militate against forfeiture.

Defendants may recover a Rule 65(c) bond only after a showing that the underlying injunction was improper. The government has argued, both in its initial opposition to the plaintiffs' motion for a preliminary injunction and again in support of its claim to the bond, that this Court had no jurisdiction to grant the plaintiffs injunctive relief. But when this Court issued the injunction, it held explicitly that it did have jurisdiction to hear plaintiffs' claims. *See* Bench Opinion delivered on December 22, 1988, at 740–41 [hereinafter Bench Opinion]. That holding remains the law of this case. The Court of Appeals vacated the preliminary injunction not because it determined that the injunction had been erroneously granted but because Congress changed the law. This Court could award defendants the bond only by completely reversing its earlier jurisdictional determination. Nothing in the defendants' argument has persuaded the Court to do so.

Apart from its jurisdictional argument, the government contends that the Court's decision to issue the injunction was wrong on the merits. Defendants point to the enactment of OBRA in support of this argument. According to defendants, Congress by enacting OBRA has declared this Court's earlier interpretation of 42 U.S.C. § 1395rr(b)(7) to be erroneous. The Court draws precisely the opposite conclusion from Congress' action. Congress has indeed "overruled" the Court. It has done so by changing the law, which it has the absolute right to do. Congress' decision to amend the Medicare statute, however, does not imply that prior to OBRA plaintiffs did not have the right to Method II reimbursement. OBRA's amendment of the Medicare statute was prospective. While Congress could have given the statute retroactive effect, it chose not to do so. In fact, Congress directed that OBRA would not take immediate effect, providing instead for a transition period of more than a month following the law's enactment. If Congress' action said anything about the meaning of the law at the time the injunction was granted, it said that the Court's understanding of the statute was correct. The Court continues to believe that the injunction was proper at the time it was granted. This alone provides sufficient justification for returning the bond to plaintiffs.

### B. The Standard for Forfeiture of a Bond

█ Even assuming for the sake of argument that the injunction was erroneously granted, the government would still not be entitled to recover the bond. A Rule 65(c) forfeiture inquiry does not end with a determination that an injunction was improper. The court must then make an equitable judgment as to the disposition of the bond.

Defendants have taken the contrary position that a surety bond posted in connection with a preliminary injunction is automatically forfeited upon a finding that the injunction was wrongfully granted. The U.S. Court of Appeals for the District of Columbia Circuit expressly rejected this position in *Page Communications Engineers, Inc. v. Froehlke,* 475 F.2d 994, 996 (D.C.Cir.1973) (per curiam):

> Although Rule 65(c) required a bond here, it does not follow that the District Court was bound to award damages on the bond, without considering the equities of the case. The Rule did not make judgment on the bond automatic, upon a showing of damage. On the contrary, the court in considering the matter of damages was exercising its equity powers, and was bound to effect justice between the parties, avoiding any result that would be inequitable or oppressive for either party.

*See also, e.g., H & R Block, Inc. v. McCaslin,* 541 F.2d 1098, 1099 (5th Cir.1976) ("The awarding of damages pursuant to an injunction bond rests in the sound discretion of the court's equity jurisdiction."), *cert. denied,* 430 U.S. 946, 97 S.Ct. 1582, 51 L.Ed.2d 793 (1977); *Coyne–Delany Co. v. Capital Development Board,* 717 F.2d 385,

390 (7th Cir.1983) ("the district court has unquestioned power ... not to award damages on an injunction bond even though the grant of the injunction was reversed) (opinion of Posner, J.).

Under *Page Communications*, if a court determines that an injunction has been erroneously granted, the prevailing party must then demonstrate that an award of damages would be "in the interest of equity and justice." 475 F.2d at 996. The government has failed to make such a showing in this case.

### C. The Balance of Equitable Factors

■ Courts have looked to several equitable factors in deciding whether to forfeit an injunction bond. These factors include the plaintiffs' good faith in seeking injunctive relief, the strength of plaintiffs' argument on the merits, the extent of plaintiffs' unjust enrichment, the public interest, and the reason for dissolution of the injunction. All of these factors favor the plaintiffs in this case.

First, the plaintiffs acted with good faith in initiating this lawsuit. Defendants concede, as they must, that this suit arose out of a genuine legal dispute, rather than as an attempt by plaintiffs to harass the defendants or to gain a bargaining advantage. In the "absence of bad faith" on the part of the plaintiffs, the defendants' entitlement to damages is considerably lessened. *Coyne–Delany*, 717 F.2d at 392.

Second, this "was not a frivolous lawsuit." *Page Communications Engineers*, 475 F.2d at 997. The plaintiffs' view of the Medicare statute was certainly well-founded. Indeed, this Court endorsed the plaintiffs' position when it issued the injunction. Defendants based their objection to the injunction not on the validity of Transmittal 1237 but on this Court's alleged lack of jurisdiction to review HCFA's action. This jurisdictional challenge did not in any way discredit the plaintiffs' arguments on the merits. When a plaintiff brings a case as strong as the one presented by plaintiffs in this case, the sound exercise of this Court's equitable discretion counsels against forfeiture.

Third, plaintiffs in this case have not been unjustly enriched by the preliminary injunction. Defendants point out that the injunction allowed HIC to obtain higher Medicare reimbursements than would otherwise have been available, and the government seeks the return of these payments. These payments were not all profit to HIC. They were used by HIC to finance home dialysis treatments for renal disease patients. HIC established in the preliminary injunction hearing that it would not be able to provide home dialysis treatments without Method II payments. Far from correcting an unjust enrichment, awarding the government damages would leave HIC worse off than it would have been had the injunction been denied in the first place. If HIC's bond is forfeited, HIC would be in the position of having spent money to provide dialysis services without being able to obtain reimbursement.

Fourth, the public interest is best served in this case by returning the bond to plaintiffs. This Court does not want to discourage litigants from challenging agencies' interpretations of their governing statutes, or from contesting the legality of regulations used to implement these interpretations. The Court does not wish to penalize HIC for seeking creatively to expand the quality and quantity of services available under a government benefits program. HIC attempted, within the law, to provide to renal disease patients a treatment that, according to the overwhelming evidence it introduced at the preliminary injunction hearing, is safer for patients and enables them to lead more productive lives. HIC should not have to pay for an after-the-fact decision to preclude such treatments.

The fifth and most important factor in this case is that the preliminary injunction was vacated due to the passage of a new law. Numerous courts have found that "a change in the law that took place after the preliminary injunction was issued" provides sufficient grounds for refusal to award damages on the injunction bond. *Zenith Radio Corp. v. United States*, 823 F.2d 518, 522 (Fed.Cir.1987); *see also State of Kansas ex rel Stephan v. Adams*, 705 F.2d

1267, 1270 (10th Cir.1983) ("intervention of Congress" argues strongly against bond forfeiture); *Coyne–Delany Co. v. Capital Development Board, supra.*

Against the overwhelming weight of these factors, defendants make three arguments in favor of forfeiture. First, defendants argue that the Court of Appeals has in effect already declared the government's entitlement to the bond. Defendants note that this Court initially set the HIC bond at $1,000, and that the Court of Appeals subsequently ordered this Court to set a higher bond. Defendants suggest that the Court of Appeals would not have bothered to require the increased bond if it did not believe that defendants would be entitled to the bond upon a dissolution of the injunction.

Defendants make too much of the one-page, *per curiam* Court of Appeals order. The Court of Appeals was simply telling this Court that Rule 65(c) requires more than a nominal bond. The Court of Appeals did not address the question whether the bond would later be forfeited. It could not have addressed that question because the issue was not before the Court of Appeals at that time. The only time that issue was arguably before the Court of Appeals was when the injunction was vacated—at which time the Court of Appeals remanded the case to this Court for, among other things, a disposition of the bond. It was plainly the intention of the Court of Appeals that this Court should determine whether to forfeit the bond.

Defendants' second argument is that, in light of OBRA's clear statement of congressional intention that Medicare should not pay for home dialysis, Congress should be understood as having disapproved past payments to HIC. As discussed above, *see supra* p. 903, defendants misunderstand the implications of OBRA. Congress gave OBRA only prospective effect. It left the Method II reimbursement rules in place for some one and one-half months after OBRA's passage. Congress' decision not to make its Medicare amendment retroactive signals, if anything, a recognition that the pre-existing statutory framework gave HIC a right to the Method II reimbursement rate for home dialysis.

Finally, the government relies heavily upon the Supreme Court's decision in *Arkadelphia Milling Co. v. St. Louis Southwestern Railway,* 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517 (1919). At the outset, it is worth noting that *Arkadelphia* was decided in 1919, well before the promulgation of the Federal Rules of Civil Procedure, and it therefore cannot provide an authoritative interpretation of Rule 65(c). Even accepting fully its authority, *Arkadelphia* provides little support for defendants' position.

*Arkadelphia* involved a challenge by two railroads to rate limitations imposed by a state commission. The trial court accepted the railroads' contentions and issued an injunction against enforcement of the limitations. The court included in its injunction, however, a requirement that the railroads post a bond and that they maintain records of all passengers and freight travelling under rates that would have been prohibited by the commission. The injunction further provided that

> if it should eventually be decided that so much of the order as inhibited the enforcement of the rates ought not to have been made, the [railroads] should within a reasonable time to be fixed by the court refund in every instance to the party entitled the excess in charge over what would have been charged had the inhibited rates been applied.

*Id.* at 138, 39 S.Ct. at 239.

The Supreme Court reversed the grant of injunction and remanded the case to the trial court. The trial court then ordered the railroads to make compensation to overcharged passengers, and appointed a special master to oversee the compensation process. The railroads appealed this order to the Supreme Court. The Supreme Court, in the *Arkadelphia* opinion, upheld the trial court's plan, although it modified a few of the details.

■ Defendants' reliance on *Arkadelphia* is misplaced. The issue in *Arkadelphia* was whether the trial court had the power to impose its restitution regime on

906

the railroads, not whether the overcharged passengers had a right to compensation. The primary teaching of *Arkadelphia*, then, is that a trial court has discretion "consistent with the principles of equity" to use an injunction bond to do justice between the parties. *Id.* at 145, 39 S.Ct. at 241. The case can in no way be read to stand for the proposition that every dissolution of an injunction gives rise to a right to damages.

Even as a precedent for the proper exercise of equitable discretion, *Arkadelphia* is inapposite. The remedy ordered in *Arkadelphia* was part of the injunction itself. The trial court was willing to exercise its equitable powers to enjoin the commission's rates only on condition that passengers be guaranteed against overcharging. This Court imposed no such conditions on its injunction in this case. In fact, in ordering preliminary relief for plaintiffs the Court explicitly addressed the possibility that plaintiffs would not prevail after a full trial. In that event, the Court stated, its eventual holding would "be a prospective decision." Bench Opinion at 757. The Court made it clear from the beginning that HIC would not be held responsible for additional Medicare expenses resulting from the Court's preliminary ruling. Unlike *Arkadelphia*, then, plaintiffs in this case relied on the preliminary injunction to provide services that they otherwise would not have provided. In contrast, the railroads in *Arkadelphia* were on notice from the outset that, if they chose during the period while the case was pending before the Supreme Court to charge rates in excess of the commission's limits, they might later be required to make compensatory payments. Another crucial difference is that the injunction in *Arkadelphia*, unlike the injunction in this case, was reversed on the merits. *Arkadelphia*, in short, is entirely distinguishable from the instant case, and nothing in it is contrary to this Court's decision to return the surety bond in this case to HIC.

Defendants' request for forfeiture will be denied. The preliminary injunction in this case was not erroneously granted. It was vacated because Congress changed the

statute upon which the injunction rested. Even if the injunction is assumed to have been erroneously granted, it is this Court's finding that in balancing the equitable factors plaintiffs' position must prevail.

An appropriate order accompanies this opinion.

### ORDER

Upon consideration of plaintiffs' motion for summary judgment, defendants' renewed motion to dismiss or, in the alternative, for summary judgment, the oppositions to these motions, the arguments of counsel, and the entire record in this case, it is this 17 day of January 1991 hereby

ORDERED that plaintiffs' complaint is moot and shall be DISMISSED; and it is further

ORDERED that the bond posted by plaintiff Home Intensive Care, Inc., pursuant to this Court's order dated February 2, 1990, shall be discharged to plaintiff Home Intensive Care, Inc., along with all accumulated interest.