In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 16-2054, 16-3668, & 16-3669

HOME CARE PROVIDERS, INC., et al.,

*Plaintiffs-Appellants,*

*v.*

KELLY HEMMELGARN, et al.,

*Defendants-Appellees.*

_____

IN RE: NIGHTINGALE HOME HEALTHCARE, INC.,

*Debtor.*

NIGHTINGALE HOME HEALTHCARE, INC.,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA, et al.,

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 1:16-cv-00303-LJM-TAB, 1:16-cv-00317-LJM-TAB, &
1:16-cv-00583-LJM-TAB — **Larry J. McKinney**, *Judge.*

_____

ARGUED MAY 16, 2017 — DECIDED JUNE 27, 2017

———————————

Before BAUER, FLAUM, and KANNE, *Circuit Judges*.

FLAUM, *Circuit Judge*. This consolidated appeal was prompted by the federal government's termination of Nightingale Home Healthcare, Inc.'s Medicare provider agreement. Nightingale sought and received a preliminary injunction from the bankruptcy court that prevented the government from terminating Nightingale's agreement. On appeal, the district court concluded that the bankruptcy court had lacked jurisdiction to issue an injunction and reversed the order. We conclude, however, that the issue of whether the bankruptcy court properly granted the injunction was moot, as the bankruptcy court had dissolved the underlying injunction prior to the district court's ruling. Separately, Home Care Providers, Inc., Nightingale's sole shareholder, and its owner, Dr. Dev A. Brar, filed a civil action in the district court, alleging that certain Indiana state surveyors had committed various constitutional violations leading up to Nightingale's Medicare termination.[1] The district court dismissed those claims with prejudice. We conclude Nightingale's and Dr. Brar's constitutional claims were also jurisdictionally barred, pursuant to 42 U.S.C. § 405(g), and vacate and remand with instructions to dismiss without prejudice.

---

[1] For the remainder of the opinion, we refer to Nightingale, Home Care Providers, any other related subsidiaries, and Dr. Brar as simply, "Nightingale."

## I. Background

Nightingale Home Healthcare, Inc. provides home health care services in a number of states, including Indiana. In the course of this business, Nightingale signed a provider agreement with the United States Secretary of Health and Human Services to receive Medicare reimbursements and agreed to conform to certain statutory and regulatory requirements.

In October and November 2015, the Indiana State Department of Health ("ISDH") conducted a survey at one of Nightingale's facilities and concluded that Nightingale had failed to comply with the applicable requirements.[2] The ISDH found that Nightingale's deficiencies placed its patients in "immediate jeopardy,"[3] and recommended that the Centers for Medicare & Medicaid Services ("CMS"), which administers Medicare, terminate Nightingale's Medicare agreement. On November 17, CMS notified Nightingale that the agency would terminate Nightingale's agreement on December 10, unless Nightingale corrected its irregularities. Later, on December 8 and 9, the ISDH conducted a revisit survey and concluded

---

[2] Under 42 U.S.C. § 1395bbb(c), home health agencies are subject to periodic surveys to determine whether they are in compliance with certain statutory and regulatory requirements. These surveys can be carried out by state agencies pursuant to a contract with the Secretary. 42 U.S.C. §§ 1395aa, 1395bbb(c).

[3] "Immediate jeopardy" is defined as "a situation in which the provider's noncompliance with one or more requirements of participation has caused, or is likely to cause, serious injury, harm, impairment, or death" to a patient. 42 C.F.R. § 488.805. If the Secretary determines that deficiencies "immediately jeopardize the health and safety of the individuals to whom the agency furnishes items and services, the Secretary shall take immediate action to correct the deficiencies," up to and including termination of provider agreements. 42 U.S.C. § 1395bbb(e)(1).

that Nightingale had failed to comply, and CMS informed Nightingale that its provider agreement would terminate as scheduled. Nightingale filed an administrative appeal and requested expedited review.

## A. Bankruptcy Proceedings

On December 10, before CMS terminated the Medicare agreement, Nightingale filed a voluntary petition to reorganize in bankruptcy. Nightingale then commenced an adversary proceeding in the United States Bankruptcy Court for the Southern District of Indiana against federal and state officials administering the Medicare program, invoking the court's subject-matter jurisdiction under 28 U.S.C. §§ 157(b)(1) & 1334. Nightingale filed a complaint and an emergency motion for a preliminary injunction, seeking (1) to enjoin CMS from terminating its provider agreement during the pendency of the reorganization and completion of administrative appeals, (2) to compel CMS to pay out Medicare receivables purportedly due for services already provided, and (3) to compel CMS to continue to reimburse Nightingale for services rendered after the agreement's termination. The federal government moved to dismiss Nightingale's complaint for lack of jurisdiction.

On January 19, 2016, the bankruptcy court held an evidentiary hearing on Nightingale's request for injunctive relief. It granted the motion on January 25, directing the federal government to abide by the Medicare provider agreement. The court cautioned Nightingale that it was still obligated to comply with the applicable Medicare requirements. Finally, the court concluded that 28 U.S.C. § 1334 provided a basis for exercising jurisdiction over Nightingale's property, including, in

relevant part, its provider agreement to participate in Medicare, and could thus preserve the status quo pending exhaustion of Nightingale's administrative appeals. Thus, the court explained, the terms of the provider agreement would remain in place. The court later repeated this holding in denying the government's motion to dismiss for lack of subject-matter jurisdiction. The federal government timely sought review of the bankruptcy court's decisions in the district court.

On April 22, while the government's appeal was pending, the ISDH investigated several complaints concerning Nightingale's post-petition services. The agency again found that Nightingale was placing patients in "immediate jeopardy." The federal government subsequently sought relief from the bankruptcy court's preliminary injunction, and the court dissolved the injunction on July 15. CMS notified Nightingale that CMS would terminate the provider agreement on July 16.

On May 9, a Medicare Administrative Law Judge ("ALJ") affirmed the termination of Nightingale's provider agreement. The ALJ concluded that the evidence overwhelmingly proved that Nightingale had violated regulatory and statutory requirements, and that those deficiencies placed patients in "immediate jeopardy." Nightingale appealed the ALJ's decision to the Departmental Appeals Board in June. (Recently, on April 14, 2017, the Board affirmed the ALJ's decision, constituting a final administrative decision on Nightingale's claims).

On June 2, 2016, Nightingale sought the bankruptcy court's authority to sell all of its assets. After failing to complete a sale by July, however, Nightingale began discharging its patients and winding down Indiana business operations.

As of August 17, 2016, Nightingale had completely halted its business in Indiana.

Finally, on September 16, 2016, the district court addressed the federal government's bankruptcy appeal. The court concluded that the bankruptcy court had lacked subject-matter jurisdiction to issue the preliminary injunction, pursuant to 42 U.S.C. § 405(h) of the Social Security Act.[4] Although the bankruptcy court had already dissolved the injunction, the court rejected Nightingale's argument that the government's appeal was moot, explaining that the government could still seek restitution for the nearly $5 million in reimbursements it had provided for Nightingale's post-injunction services. After the district court issued its opinion, CMS filed a claim for restitution that is currently pending,[5] and Nightingale timely filed this appeal.

### B. Constitutional Claims

Separately, on February 4, 2016, Nightingale initiated a civil proceeding in federal court against Sylvia Matthews Burwell, then-Secretary of the United States Department of Health and Human Services; Jerome Adams, Commissioner of the Indiana State Department of Health; and Kelly Hemmelgarn, Randall Snyder, and Ingrid Miller, three Indiana

---

[4] Under 42 U.S.C. § 1395ii, the provisions of 42 U.S.C. § 405(h) "shall [] apply with respect to [the Medicare Act] to the same extent as they are applicable with respect to [the Social Security Act]."

[5] CMS brought its separate restitution claim before the bankruptcy court on July 21, 2016, while this case was pending before the district court. The bankruptcy court denied the government's request, and the government appealed the matter to the district court. Upon a joint motion, the district court then stayed the restitution case pending the outcome of this appeal.

state surveyors. According to the complaint, the defendants had collectively abused the Medicare survey process, violating Nightingale's (1) equal-protection, (2) First Amendment, (3) due-process, and (4) Fourth Amendment rights. Nightingale requested an order directing the state defendants to withdraw all of the survey reports issued against Nightingale since January 1, 2015, including those underlying the termination of Nightingale's Medicare agreement. Nightingale also sought an injunction preventing CMS from using the Indiana State Department of Health to conduct further surveys of Nightingale, or an order directing Indiana to conduct surveys against Nightingale only upon the filing of a bona fide, third-party complaint alleging facts likely to constitute an immediate threat to the health and well-being of patients. Finally, Nightingale requested money damages from the state surveyors.

Defendants moved to dismiss Nightingale's complaint, arguing that the district court lacked subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and that the complaint failed to state a claim for which relief could be granted under Rule 12(b)(6). The district court granted both motions and dismissed the case with prejudice. This appeal followed.

On May 1, 2017, while this appeal was pending, Nightingale moved to dismiss its case against the Secretary and the Commissioner, and all claims for equitable relief, as Nightingale had ceased its operations in Indiana. All that remains are Nightingale's constitutional claims against the state surveyors and its request for damages.

## II. Discussion

### A. Bankruptcy Appeal

As a threshold matter, Nightingale asserts that the bankruptcy case was moot prior to the district court's decision, because the bankruptcy court had already dissolved the injunction at issue. The government does not dispute that the bankruptcy court had dissolved the injunction, but argues that its separate restitution action (now pending before the district court) presented a live and equitably redressable controversy. "Whether a case has been rendered moot is a question of law that we review *de novo*." *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chi.*, 326 F.3d 924, 928–29 (7th Cir. 2003) (citation omitted). "Under Article III of the Constitution, the judicial power of the United States extends only to cases and controversies." *Wis. Right to Life, Inc. v. Schober*, 366 F.3d 485, 488 (7th Cir. 2004) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998)). "This jurisdictional requirement ensures that the resources of the federal judiciary are not expended on advisory opinions and hypothetical disputes." *Id*. Accordingly, "cases that do not involve 'actual, ongoing controversies' are moot and must be dismissed for lack of jurisdiction." *Id*. at 490–91. (quoting *Fed'n*, 326 F.3d at 929). Nightingale, the party asserting mootness, bears the burden of persuasion. *Id.* at 491 (citation omitted).

The scope of an appellate court's review over a preliminary injunction that has expired while on appeal is controlled by the Supreme Court's decision in *University of Texas v. Camenisch*, 451 U.S. 390 (1980); *see also Nat'l Kidney Patients Ass'n v. Sullivan*, 902 F.2d 51, 54 (D.C. Cir. 1990) (*Kidney Patients I*) (citing *Camenisch*, 451 U.S. at 394–95). In *Camenisch*, a deaf grad-

uate student sought and received injunctive relief that required the University of Texas to appoint him a sign-language interpreter. *Id*. at 392. The university appealed the injunction decision and, while that appeal was pending, the university paid for the plaintiff's interpreter, and the plaintiff graduated. *Id*. at 393. The Fifth Circuit affirmed the injunction and rejected the notion that the case was moot, explaining that the issue of who should pay for the interpreter still remained. *Id*. The Supreme Court, however, concluded that the appeal was moot, because the terms of the injunction had been fully carried out. *Id*. at 398. The question of who should bear the cost of the injunction was "significantly different" from the "[validity of the] injunction itself," and could not breathe life into the now-moot controversy. *See id.* at 393 ("[T]he issue before the Court of Appeals was not who should pay for the interpreter, but rather whether the District Court had abused its discretion in issuing a preliminary injunction requiring the University to pay for him. The two issues are significantly different …") (internal citations omitted). Instead, the case was "simply another instance in which one issue in a case ha[d] become moot, but the case as a whole remain[ed] alive because other issues ha[d] not become moot." *Id*. (citation omitted). Because the injunction was the only issue before the Court at that time, *id*. at 394, the Court concluded that it lacked jurisdiction and remanded the case to the district court for a trial on the merits to address questions of costs, *id*. at 398.

Here, the case before the district court—sitting as a court of review—was indistinguishable from *Camenisch*. The issue on appeal was whether the bankruptcy court had improperly implemented the preliminary injunction, and that issue became moot once the bankruptcy court dissolved the injunction. Unfortunately for the government, courts of review may

consider only the issues raised before them. *See Camenisch*, 451 U.S. at 393; *see also St. Pierre v. United States*, 319 U.S. 41, 42 (1943) ("A federal court is without power to decide moot questions or to give advisory opinions which cannot affect the rights of the litigants *in the case before it*." (citing *United States v. Alaska S.S. Co.*, 253 U.S. 113, 115 (1916))) (emphasis added); *Kidney Patients I*, 902 F.2d at 54 (citation omitted). In fact, unlike the university in *Camenisch*, the government has not presented a restitution issue on appeal; rather, it brought the restitution claim as a separate lawsuit that is still pending before the district court. Because a party cannot avoid mootness by making reference to a different live *issue*, it follows that it cannot do so using an entirely separate *action*. Accordingly, the district court lacked jurisdiction to address the merits of the injunction, and the government's separate restitution action did not revive that court's jurisdiction. *See Camenisch*, 451 U.S. at 393–95; *see also Orion Sales, Inc. v. Emerson Radio Corp.*, 148 F.3d 840, 842 (7th Cir. 1998) ("[R]eview of a preliminary injunction that has become moot would run afoul of the constitutional command that limits our jurisdiction to cases and controversies.") (citation and quotation marks omitted); *Henco, Inc. v. Brown*, 904 F.2d 11, 13–14 (7th Cir. 1990) ("[T]he issue of whether the district court should have issued the preliminary injunction is moot because the injunction has dissolved … well before this appeal was heard. It would be inappropriate for this court to intimate any view on the merits of the parties' competing claims….").[6]

---

[6] Although the parties did not rely on it here, the Supreme Court's decision in *Liner v. Jafco, Inc.*, 375 U.S. 301 (1964), is often cited for the proposition that parties prejudiced by erroneously granted injunctions may

The government's reliance on *Arkadelphia Milling Co. v. St. Louis Southwestern Railway. Co.*, 249 U.S. 134, 145–46 (1919), is unpersuasive. In *Arkadelphia*, railway companies had sought and received injunctions to restrain the enforcement of certain intrastate freight and passenger rates. *Id.* at 137–38. In assessing the defendants' appeal against the injunctions, the Supreme Court delineated the equitable principle that a party against whom an erroneous judgment has been carried into effect is entitled to be restored. *Id*. at 145. The power to carry out that principle, however, is only inherent in a court "so

avoid mootness notwithstanding the dissolution of the underlying injunction. *See id*. at 305–06. We note two distinctions between our case and *Liner*. First, the injunction in *Liner* included an injunction bond that constituted the legal interest precluding mootness. *id.* at 394 ("The petitioners plainly have a substantial stake in the judgment [affirming an injunction] which exists apart from and is unaffected by the [injunction's dissolution]. Their interest derives from … respondent['s] … injunction bond [requiring it] to indemnify them in damages if the injunction was 'wrongfully' sued out.") (internal citation and quotation marks omitted). Here, the underlying injunction included no such bond. Consol. Appx at 37. ("Debtor shall not be required to post the security that would otherwise be required under Fed. R. Civ. P. 65(c), made applicable to the Adversary Proceeding by Fed. R. Bankr. P. 7065."). Second, the injunction in *Liner* was permanent, not preliminary. *See Camenisch*, 451 U.S. at 396 ("[W]here a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy. Thus when the injunctive aspects of a case become moot on appeal of a preliminary injunction, any issue preserved by an injunction bond can generally not be resolved on appeal, but must be resolved in a trial on the merits. Where, by contrast, a federal district court has granted a permanent injunction, the parties will already have had their trial on the merits, and, even if the case would otherwise be moot, a determination can be had on appeal of the correctness of the trial court's decision on the merits, since the case has been saved from mootness by the injunction bond.").

long as it retains *control of the subject-matter*." *Id*. at 146 (emphasis added). In this case, the issue was moot by the time it came before the district court, and, as a result, the district court lacked subject-matter jurisdiction. *See Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011). Thus, no equitable relief was permissible.

The government's reliance on *National Kidney Patients Association v. Sullivan*, 958 F.2d 1127, 1136–37 (D.C. Cir. 1992) (*Kidney Patients II*), meets the same fate. There, the government challenged an injunction enjoining it from reducing Medicare reimbursements for certain treatments and eventually sought recoupment of amounts paid under the injunction. *Id*. at 1129. Before addressing recoupment in *Kidney Patients II*, however, the court had concluded in a previous opinion that the injunction issue had been mooted by newly-enacted legislation, stripping the court of subject-matter jurisdiction. *Id*. (citing *Kidney Patients I*, 902 F.2d at 55); *see also Kidney Patients I*, 902 F.2d at 54–55. In fact, in *Kidney Patients I*, the court had rejected the argument that the government now proffers, stating,

> [T]he recoupment of any reimbursement for [the expenses at issue] … was not presented on appeal. Those claims must first be determined by the trial court on the merits before they can furnish a basis for appellate review .… The only issue presently before us—the correctness of the decision to grant a preliminary injunction—is no longer justiciable. Accordingly, the appeal is dismissed.…

902 F.2d at 54–55 (internal citations omitted). This case mirrors *Kidney Patients I*, and we likewise conclude that the "correctness of the decision to grant a preliminary injunction" was moot. *Id.* at 55.

This leads us to the question of vacatur. The government argues that if there is no longer a controversy regarding the preliminary injunction, this court should simply dismiss the appeal, not reverse the lower court's judgment. *See Orion*, 148 F.3d at 843. Thus, concludes the government, the district court's decision that the bankruptcy court lacked jurisdiction to issue the injunction should be left intact. While the government's reasoning is correct, its conclusion ignores the additional layer of review in bankruptcy cases. In *Orion*, the district court's preliminary injunction became moot, and this Court, the first reviewing court, dismissed the appeal without disturbing the district court's order granting the injunction. *Id*. Here, the *bankruptcy court*'s injunction became moot, and the *district court* was the first to review the bankruptcy court's order. This procedural posture makes all the difference: Because we conclude that the injunction had expired before the district court had issued its ruling, that court should have dismissed the appeal as moot, leaving the bankruptcy court's orders undisturbed. *See Certified Grocers v. Produce Union, Local 703*, 816 F.2d 329, 332 (7th Cir. 1987) ("[A]ppeals from expired preliminary injunctions should be dismissed without vacating the underlying order.") (citing *Gjersten v. Bd. of Election Comm'rs*, 751 F.2d 199 (7th Cir. 1984)). As such, we vacate the district court's judgment reversing the bankruptcy court's injunction orders.[7]

---

[7] Our decision leaves the parties free to dispute the merits of the injunction as it relates to the government's restitution action—a live issue

### B.  Constitutional Claims

We turn next to Nightingale's constitutional challenges.
Like the bankruptcy appeal, this dispute begins and ends
with jurisdiction.

Nightingale argues that its claims invoked the district
court's subject-matter jurisdiction under 42 U.S.C. § 405(g).[8]
Typically, "an institution dissatisfied with a final decision by
the Secretary to terminate its Medicare provider agreement
may obtain judicial review of the matter in accordance with
42 U.S.C. s 405(g)." *Northlake Cmty. Hosp. v. United States*, 654
F.2d 1234, 1240 (7th Cir. 1980) (citing 42 U.S.C. § 1395ff(c)). Re-
view is available, however, only if that institution satisfies
three requirements: It must (1) bring an action "after any final
decision of the Secretary made after a hearing to which (the
provider) was a party;" (2) commence the action within sixty
days after the mailing of the notice of decision by the Secre-
tary or within such time as the Secretary may allow; and (3)
file the action in an appropriate court. *Id.* (citing 42 U.S.C.
§ 405(g)). The Supreme Court has regarded the "requirement

---

pending in the district court. In the event either party is dissatisfied with
the outcome of that action and files an appeal, we can review the merits of
the underlying decisions then. *See Henco*, 904 F.2d at 13 ("If [appellant]
eventually moves the district court for damages on the injunction bond
and is dissatisfied with the district court's ruling, we can review the cor-
rectness of the trial judge's decision after the district court has had an op-
portunity to fully deliberate on the merits of the parties' claims.").

[8] Although Nightingale did not assert jurisdiction based on § 405(g) in
its complaint, it argues on appeal that we may nonetheless recognize it as
a basis for federal jurisdiction. *See Littleton v. Berbling*, 468 F.2d 389, 395
(7th Cir. 1972). We need not reach this issue, however, because Nightin-
gale did not comply with § 405(g)'s administrative-exhaustion require-
ment.

that there be a final decision by the Secretary after a hearing" as "central to the requisite grant of subject-matter jurisdiction." *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 764 (1975)). This requirement consists of two elements, "only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case." *Id*. "The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The nonwaivable element is the requirement that a claim for benefits shall have been presented to the Secretary." *Id*.

Nightingale does not dispute that it failed to exhaust its administrative remedies. Indeed, only on April 14, 2017—some fourteen months after Nightingale filed its action against the state surveyors—did the Board issue its final decision upholding the government's termination of Nightingale's Medicare agreement. Instead, Nightingale argues that this case falls within an exception, allowing for waiver of the exhaustion requirement. We have previously detailed the two circumstances in which waiver is appropriate:

> If the Secretary determines that additional administrative review would be futile either because the agency's needs have been satisfied or because the requested relief is beyond the agency's power to confer the Secretary may waive the exhaustion requirement at any stage of the administrative process. Similarly, if the claimant raises a constitutional challenge which is entirely collateral to his claim of entitlement, and the claimant's interest in having

the issue resolved promptly is so great that defer-
ence to the agency's judgment is inappropriate, the
court may waive the exhaustion requirement.

*Northlake*, 654 F.2d at 1241 (internal quotation marks and
alterations omitted (quoting *Eldridge*, 424 U.S. at 330) (citing
*Salfi*, 422 U.S. at 765–67)). This case does not fall into either of
these exceptions. The Secretary has not waived Nightingale's
exhaustion requirement, and the constitutional claims are ei-
ther not "colorable," not "entirely collateral" to Nightingale's
substantive entitlement claims, or both. *See id.* ("The mere as-
sertion of a constitutional claim is not enough" to mandate a
waiver of § 405(g)'s exhaustion prerequisite; "the record be-
fore the court must present a colorable constitutional claim.")
(citation omitted).

As pled, most of Nightingale's constitutional challenges
are not entirely collateral to its substantive entitlement claims.
It alleged, in part, "class-of-one" and racial discrimination
equal-protection claims, a First Amendment claim, and a due-
process claim—all based on its allegations that the state sur-
veyors subjected them to an inordinate number of surveys
and administrative complaints, issued harsh findings and re-
ports, and failed to provide specific information regarding the
Medicare termination, all without a rational basis. "A party,"
however, "cannot avoid the Medicare Act's jurisdictional bar
simply by styling its attack as a claim for collateral damages
instead of a challenge to the underlying denial of benefits."
*Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480,
487 (7th Cir. 1990). Indeed, "[i]f litigants who have been de-
nied benefits could routinely obtain judicial review of these
decisions by recharacterizing their claims under state and fed-

eral causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined." *Id*. (citing *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 680 n.11 (1986)). We understand Nightingale's claims to be administrative challenges framed as collateral constitutional ones—inappropriately attacking the survey results underlying Nightingale's Medicare termination. *See id.* at 484–86 (citing *United States v. Erika*, 456 U.S. 201 (1982)). It is telling that Nightingale originally sought orders to remove the state's survey results and prevent the state from surveying Nightingale moving forward.[9] The applicable Medicare regulations provided Nightingale an opportunity to challenge the surveyors' approach in a two-tiered appellate system, including formal evidentiary hearings and opportunities to present written argument. *See generally* 42 U.S.C. § 1395cc(h)(1); 42 C.F.R. §§ 431.153, 498.40–498.66, 498.80, 498.85–86. Indeed, Nightingale availed itself of this process, but filed the present civil action before receiving a final decision. This it cannot do.

Moreover, Nightingale's generalized allegations do not amount to colorable constitutional challenges. Plaintiffs alleging equal-protection violations must identify, at a minimum, the type of discrimination suffered, by whom, and when. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010) (citations omitted). Nightingale's class-of-one claim fails to include integral details regarding what the survey and inspection process normally entails; how Nightingale's survey process deviated from that process; which particular surveys or

---

[9] Although Nightingale now seeks only damages, they do so because they have ceased operating in Indiana; this does not alter our interpretation of its claims as they were originally pled.

inspections were "harsh" and how; or whether the state surveyors strayed from the applicable regulatory and statutory guidelines governing the survey process. And Nightingale's claim that the allegedly harsh survey process was due to racial animus fares no better. The only evidence Nightingale points to is a voicemail left by defendant Snyder's unnamed colleague, during which the individual purportedly voiced "racially tinged" remarks in the background after forgetting to disconnect the call. Nightingale fails, however, to connect these remarks to any named state surveyor. The remainder of Nightingale's allegations rely on general speculation that the state surveyors were motivated by race. Without more, Nightingale's equal-protection claims do not rise to the level of colorable constitutional challenges.

Further, Nightingale did not include arguments or cite to legal authority in its opening brief regarding its First Amendment or due-process claims. It has thus waived any argument on appeal that these claims are colorable. *See, e.g.*, *United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."(quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009)).

Finally, Nightingale's Fourth Amendment claim lacks sufficient detail. Nightingale alleged that the state surveyors conducted an unreasonable search and seizure by entering one of its former business premises and rummaging through desks. It is not clear, however, whether Nightingale owned the building, given that the complaint describes the building as "*former* business premises." (emphasis added). *See United States v. Fuesting*, 845 F.2d 664, 671 (7th Cir. 1988) ("It is well-established that Fourth Amendment rights are personal rights

which … may not be vicariously asserted…. A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed .…") (citations and internal quotation marks omitted). It is equally unclear what Nightingale's alleged damages are, because there is no allegation that the state surveyor obtained any information from inside the building or any details of what that information entailed. Without more, Nightingale has failed to present a colorable Fourth Amendment claim. *See Eastern Bridge, LLC v. Chao*, 320 F.3d 84, 91 (1st Cir. 2003) ("Plaintiffs also assert that because they are alleging a Fourth Amendment violation, they need not exhaust administrative remedies. But this invocation of constitutional authority, without more, cannot breathe life into a theory already pronounced dead by the Supreme Court in binding precedent.").

This case thus does not call for us to waive § 405(g)'s administrative-exhaustion requirement. Given that Nightingale failed to satisfy all three of § 405(g)'s requirements, the district court correctly determined that it was statutorily barred from considering the case. The district court, however, dismissed the claims with prejudice. Because we conclude that the claims are jurisdictionally barred by § 405(g), the complaint should be dismissed without prejudice. *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438–39 (7th Cir. 2004) ("A jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without

prejudice on the merits ….” (citing *T.W. v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997))).[10]

### III. Conclusion

For the foregoing reasons, we VACATE the judgment of the district court regarding the bankruptcy appeal, and REMAND to the district court for further proceedings. Additionally, we VACATE the judgment of the district court regarding the constitutional claims and REMAND with instructions to dismiss these claims without prejudice for lack of subject-matter jurisdiction.

---

[10] In light of our conclusion that Nightingale's claims were jurisdictionally barred under § 405(g)'s administrative-exhaustion requirement, we offer no opinion regarding whether these claims were barred by § 405(h).