FOOD CHEMICAL NEWS, et al., Plaintiffs,

v.

Frank E. YOUNG, et al., Defendants.

Civ. A. No. 89–0011–LFO.

United States District Court, District of Columbia.

March 9, 1989.

Katherine A. Meyer, Eleanor H. Smith, Alan B. Morrison, Public Citizen Litigation Group, Washington, D.C., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Elizabeth A. Pugh, Steve Frank, Atty., Dept. of Justice, Civil Div., Washington, D.C., for Federal defendant.

Jo V. Morgan, Jackson & Campbell, P.C., Washington, D.C., for defendant Federation of American Societies for Experimental Biology.

## MEMORANDUM

OBERDORFER, District Judge.

On March 29, 1988, the Food and Drug Administration ("FDA") published Solicitation No. 223–88–2124, entitled "Analysis of Scientific Issues in Food and Cosmetic Safety." The solicitation sought a contract to provide "expert, objective counsel to the [FDA's] Center for Food Safety and Applied Nutrition on general and specific issues associated with the safety of food and cosmetics." Federal Defendant's Exhibit 1A at § B.1. The solicitation stated that one factor in the FDA's contracting decision would be the bidder's ability to draw on outside expertise in relevant disciplines. *See id.* at § M.2.a.; Federal Defendant's Memorandum in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment and in Opposition to Plaintiff's Motion for a Preliminary Injunction ("Federal Defendant's Opposition to Preliminary Injunction") at 6. The solicitation did not specifically require the appointment of an "Expert Panel" or task force. Two companies bid for the contract. Defendant Federation of American Societies for Experimental Biology ("FASEB") proposed the use of expert panels and was granted the contract in June 1988. *See* Federal Defendant's Statement of Material Facts as to Which There is No Genuine Issue at ¶¶ 5, 6. The other bid did not propose the use of expert panels.

On September 30, 1988, the FDA presented FASEB with Task Order No. 3, which stated that FASEB "shall assemble an expert panel of scientists who have expertise in the areas of life sciences, food sciences and risk assessment or cost benefit analysis" to "prepare a report to the contractor," who would then "review all comments and information prepared by the panel and prepare a report for submission to the FDA." Plaintiffs' Exhibit C at §§ C–2, C–3. FASEB then gathered a group of seven experts, none of whom are employed on a full-time basis by the government, to work on a panel that, in FASEB's own words, "will assist FDA in identifying and categorizing the important issues that will influence FDA's responsibilities for food safety and quality in the remaining decade of this century." Plaintiffs' Exhibit D at 2. This group has already held one meeting and has another meeting scheduled for March or April.

Plaintiffs claim that the Expert Panel should be subject to the requirements of the Federal Advisory Committee Act ("FACA"), 5 U.S.C.App. 2, including a "balanced membership" and public meetings. Although plaintiffs originally sought a preliminary injunction, all parties have now filed motions to dismiss or for summary judgment, and plaintiffs have requested that the hearing on the preliminary injunction be consolidated with a hearing on the merits. All parties now agree that this dispute should be resolved by these motions to dismiss or for summary judgment.

Defendant FASEB contends that plaintiffs have not stated a claim against it upon which relief can be granted because FACA "does not permit suit by a private party against another pre-existing private party," and because a suit against the government is sufficient to provide relief under FACA. *Washington Legal Foundation v. American Bar Ass'n Standing Comm. on Federal Judiciary*, 648 F.Supp. 1353, 1361 & n. 7 (D.D.C.1986). Plaintiffs have not contested this contention. Accordingly, the accompanying Order will grant defendant FASEB's motion to dismiss for failure to state a claim upon which relief can be granted.

Plaintiffs and federal defendant filed cross-motions for summary judgment on the issue of whether the Expert Panel is an "advisory committee" under FACA. The Act defines an advisory committee as, *inter alia,*

> any committee, board, commission, council, conference, panel, task force, or other similar group, ... which is ... established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government, except that such term excludes ... any committee which is composed wholly of full-time officers or employees of the Federal Government.

5 U.S.C.App. 2 at § 3. Plaintiffs and federal defendant agree that the Expert Panel must be considered an "advisory committee" if it was "established by" the FDA or is being "utilized by" the FDA. *See* Federal Defendant's Opposition to Preliminary Injunction at 11; Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction at 1. Because the material facts, none of which are in dispute, demonstrate that the Expert Panel was established by the FDA and is being utilized by the FDA, plaintiffs' motion for summary judgment must be granted.

On the establishment question, plaintiffs argue that Task Order No. 3 required FASEB to set up the Expert Panel and that the mere fact that FASEB chose the panel's members does not mean that the FDA did not "establish" the panel. Federal defendant, however, argues that the original solicitation did not require an expert panel and that FDA only issued Task Order No. 3 in response to FASEB's technical proposal in its bid that suggested such a panel. Thus, federal defendant claims that it was really FASEB, not FDA, that "established" the panel. The question of whether FDA established the Expert Panel, however, is not capable of resolution by simply deciding which entity first proposed the notion of an Expert Panel. Certainly an agency can be deemed to have "established" an advisory committee even though the impetus for that establishment came from outside the agency. Thus, the real issue is whether Task Order No. 3 mandates a committee of outside experts, in which case the FDA has established that committee, or whether the task order leaves the means of obtaining expert advice solely in the hands of the contractor, in which case the FDA has not established the committee.

Task Order No. 3 states that its objective is "to provide, through outside expert means, counsel on issues that the scientific community considers of primary importance in the upcoming years." Plaintiffs' Exhibit C at § B–2. But the task order does not leave in doubt the question of how that expert advice is to be obtained. It specifically requires the contractor to "as-semble an expert panel of scientists who have expertise in the areas of life sciences, food sciences and risk assessment or cost benefit analysis" that will prepare a report to the contractor for submission to the FDA. *Id.* at §§ C–2, C–3. Defendant FASEB admitted as much when, in a letter to the panel members, its Life Sciences Research Office stated that it was "establishing the Panel *at the request of the Food and Drug Administration (under FDA Contract No. 223–88–2124)."* Plaintiffs' Exhibit D at 1. Thus, the FDA, by issuing Task Order No. 3, established the Expert Panel.

*Lombardo v. Handler,* 397 F.Supp. 792 (D.D.C.1975), *aff'd,* 546 F.2d 1043 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977), which federal defendant relies on heavily, is not to the contrary. *Lombardo* held that a committee created by the National Academy of Sciences under a contract with the Environmental Protection Agency was not an "advisory committee" under FACA. Although the fact that the proposal to create a committee within the Academy to conduct the air pollution study at issue in that case appeared to originate with the Academy, rather than with the agency, was certainly a factor in the *Lombardo* court's decision, it was not a definitive factor. *See id.* at 797. Just as important, if not more important, was a letter from the agency to the Academy "indicat[ing] that the E.P.A. was primarily concerned about the substance, scope and focus of the scientific study rather than with the internal organizational arrangements of the contractor performing the study." *Id.* Significantly missing from *Lombardo* was any contractual requirement placed by the agency upon the contractor as to *how* expert advice would be obtained. Thus, in *Lombardo* the agency hired the National Academy of Sciences to conduct a study and left the details of how that study was to be conducted up to the Academy. In contrast, in this case the FDA specifically contracted for an expert panel, put together by FASEB, to provide expert guidance to the agency on priorities in the coming decade. Task Order No. 3

indicates more than just agency "concern" over "the internal organizational arrangements of the contractor performing the study." Rather, Task Order No. 3 expressly mandates a certain organizational arrangement, namely an expert panel. Accordingly, even the *Lombardo* analysis yields the conclusion that the FDA established the Expert Panel within the meaning of FACA.

The panel is also being "utilized by" the FDA within the meaning of FACA. Although the final report to the agency will technically be from FASEB, the record makes clear that the report will be, in all material respects, a report of the Expert Panel. Even FASEB's Technical Proposal in response to Task Order No. 3 states, *"The ad hoc Expert Panel will prepare a documented report* that addresses these topics [*i.e.*, FDA priorities]." Federal Defendant's Exhibit 1E at T–3 (emphasis added). The role of the FASEB staff assigned to this contract is "to support and administer the ad hoc Expert Panel's activities," not to provide substantive input. *Id.* at T–4. Indeed, FASEB is only assigning three individuals to work on this project: a Project Director, an Administrative Assistant, and a Secretary. *See* Plaintiffs' Exhibit C at § C–5(A). FASEB is only supplying administrative assistance; the Expert Panel is supplying the expertise that will be "utilized by" the FDA. As Kenneth D. Fisher of FASEB's Life Sciences Research Office ("LSRO") stated in FASEB's response to the FDA's original solicitation, "Discussion of the participants at the *ad hoc* group meeting constitutes the major basis for the LSRO report to the sponsoring agency." Federal Defendant's Exhibit 1B at Enclosure T–4, ¶ D; *accord* Federal Defendant's Exhibit 1E at T–5. Indeed, a FASEB brochure presented by plaintiffs nowhere indicates that FASEB has the capacity to provide scientific expertise. Instead, the brochure advertises such services as "membership maintenance and dues billing, bookkeeping and accounting, meeting and exhibit management, ... publication and composition, printing and data processing" and the availability of facilities including a "well-equipped print shop," a

mail room, and four conference rooms. Plaintiffs' Exhibit B.

Furthermore, the procedures to be followed in the preparation of the report to the FDA guarantee that the opinions expressed therein will be those of the Expert Panel and not those of FASEB. Although the FASEB staff will draft an initial report, that report will be based on the Expert Panel's deliberations, will be revised by the FASEB staff as directed by the panel, and must be approved by the Expert Panel before it can be submitted to the agency to fulfill FASEB's contractual obligations. *See* Federal Defendant's Exhibit 1B at T–8, Exhibit 1E at T–7. In addition, the FDA will be sent a draft report before any FASEB supervisory personnel ever reviews the report. *See* Federal Defendant's Exhibit 1E at T–7. Even when the FASEB Board does review the report, however, it will only be asked to determine if the report meets the contract's scope of work requirements, is written in a scientific, scholarly manner, and is complete and scientifically valid. *See* Declaration of Kenneth D. Fisher, Ph.D., Federal Defendant's Exhibit 2 at ¶ 4. The FASEB Board will not be asked to assess the value of or make any independent contribution to the substantive opinions contained in the report. As long as the opinions are scientifically valid—surely a less than stringent criterion in the realm of opinions regarding priorities—and well-written, the FASEB Board must approve the report even though its members might personally provide the FDA with different advice. This further proves that the advice the FDA is seeking is the advice of the Expert Panel, not the advice of FASEB.

Even the "final review" by the FASEB Executive Director, relied on so heavily by federal defendant, does not convert the report into a FASEB report rather than an Expert Panel report for purposes of FACA. If the Executive Director determines that the report "is not scientifically valid or is otherwise in error" and the Expert Panel refuses to modify the report, "FASEB would not forward the report to the sponsoring agency." *Id.* at ¶ 6. Thus, FASEB

cannot simply send its own opinions to the agency. It can either send the panel's opinions or it can send no opinions and breach its contract with the FDA. Therefore, if the agency is to utilize anybody's opinions, it will be the opinions of the Expert Panel, not the opinions of FASEB.

Again, *Lombardo* is not to the contrary on the question of whether the Expert Panel is being "utilized by" the FDA. First, the *Lombardo* court was heavily influenced by legislative history specifically addressing the special role of the National Academy of Sciences. *See Lombardo*, 397 F.Supp. at 798–800. Second, the legislative history upon which the *Lombardo* court relied to divine a legislative intent to exclude from FACA "groups providing advice to federal agencies pursuant to a contractual relationship" is ambiguous and is not reflected in any statutory provision. Had Congress intended to exclude from FACA all committees formed by government contractors, it could easily have so provided in the statute. But it did not.

Finally, the *Lombardo* court noted that the Department of Justice in 1973 concluded, in spite of the legislative history cited in *Lombardo*, that the mere existence of a contractual relationship could not automatically remove a committee from the coverage of FACA. Rather, the Department of Justice identified the "substance of the relationship" between the agency and the contractor—focusing specifically on the review procedures by which the contractor did or did not exercise control over the committee's report—as the critical element in determining whether a committee formed by a contractor was being utilized by the agency. *See id.* at 800 n. 22. Although the *Lombardo* court did not similarly refer to this factor as "controlling," it did consider the relationship between the contractor and the committee. Concluding that the final report would be a report of the National Academy of Sciences rather than a report of the Academy's committee, the court held that the agency was, therefore, utilizing the Academy, not the Academy's committee. *See id.* at 800.

In contrast, as has been discussed *supra,* FASEB's review procedures are such that the final report will, in all material respects, be a report of the Expert Panel, not of FASEB. In *Lombardo,* the National Academy of Sciences was utilizing a committee to assist it in providing *its* advice to the Environmental Protection Agency. In this case, however, FASEB will not be presenting its advice to the FDA; it can only present the Expert Panel's advice. *See supra* at 8. Because even the *Lombardo* court recognized that the legislative history upon which it was relying was ambiguous and heavily influenced by the special role of the National Academy of Sciences, *see Lombardo,* 397 F.Supp. at 800, and because the only remaining factor considered by the *Lombardo* court—the nature of the relationship between the contractor and the committee—indicates that the substance of the report submitted to the FDA will come exclusively from the committee rather than from the contractor, the FDA must be found to be utilizing the Expert Panel.

■ Because the material facts not in dispute indicate that the Expert Panel is an advisory committee within the meaning of FACA, the accompanying Order will grant plaintiffs' motion for summary judgment and declare that the Expert Panel is subject to the provisions of FACA. Assuming that federal defendant will comply fully and in good faith with the law here declared, no injunction is necessary at this time. Nevertheless, plaintiffs retain the ability to apply for injunctive relief if the Court's confidence in federal defendant should prove to be misplaced.

### ORDER

For the reasons stated in the accompanying Memorandum, it is this <u>8th</u> day of March, 1989, hereby

ORDERED: that defendant Federation of American Societies for Experimental Biology's motion to dismiss should be, and is hereby, GRANTED; and it is further

ORDERED: that federal defendant's motion to dismiss and motion for summary

judgment should be, and are hereby, DENIED; and it is further

ORDERED: that plaintiffs' motion for summary judgment should be, and is hereby, GRANTED; and it is further

ORDERED: that plaintiffs' motion for a preliminary injunction should be, and is hereby, DENIED as moot; and it is further

DECLARED: that the Expert Panel on Emerging Issues in Food Safety and Quality During the Next Decade ("Expert Panel") is an "advisory committee" subject to the requirements of the Federal Advisory Committee Act, 5 U.S.C.App. 2, *as amended;* and it is further

DECLARED: that plaintiffs are entitled to an award of reasonable attorneys' fees and costs in this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.