**FOOD CHEMICAL NEWS, et al., Appellees,**

v.

**Frank E. YOUNG, Commissioner, Food and Drug Administration, Appellant.**

No. 89–5142.

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 1990.

Decided April 6, 1990.

Marleigh D. Dover, Atty., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Jay B. Stephens, U.S. Atty., Douglas N. Letter, Washington, D.C., and Victoria F. Nourse, Attys., Dept. of Justice and Leslie Kux, Associate Chief Counsel for the Food and Drug Admin., were on the brief, for appellant.

Eleanor H. Smith, with whom Alan B. Morrison and David C. Vladeck, Washington, D.C., were on the brief, for appellees. Katherine A. Meyer, Washington, D.C., also entered an appearance for appellees.

Jo V. Morgan, Jr., Washington, D.C., was on the brief for amicus curiae, Federation of American Societies for Experimental Biology, urging reversal.

James R. Wright, Calvin H. Cobb, Jr., Washington, D.C., and Stewart Abercrombie Baker were on the brief, for amicus curiae, National Academy of Sciences, urging reversal.

Before RUTH BADER GINSBURG, SILBERMAN, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

This appeal requires us to decide whether the Federal Advisory Committee Act (FACA), 5 U.S.C. App. II § 1 *et seq.* (1982 and Supp. V), applies to a group of experts selected and managed by a private scientific organization pursuant to the organization's contract with the Food and Drug Administration (FDA) to provide counsel on food and cosmetics safety issues. The contractor, Federation of America Societies for Experimental Biology (FASEB), is a federation of major bio-medical research organizations (the American Physiological Society, the American Society for Biochemistry and Molecular Biology, the American Society for Pharmacology and Experimental Therapeutics, the American Association of Pathologists, the American Institute of Nutrition, the American Association of Immunologists, and the American Society for Cell Biology). Implementing its contract with the FDA, FASEB assembled a group of seven experts to address food safety and quality issues of concern to the FDA's Center for Food Safety and Applied Nutrition. This expert group, titled Expert Panel on Emerging Issues in Food Safety and Quality During the Next Decade, was declared by the district court an "advisory committee" subject to the requirements of FACA. *Food Chemical News v. Young,* 709 F.Supp. 5 (D.D.C.1989).

Just over three months after the district court's decision, the Supreme Court released a pathmarking opinion on the scope of FACA: *Public Citizen v. United States Dep't of Justice,* —— U.S. ——, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989). Applying the analysis indicated in that controlling precedent, we conclude that the expert panel FASEB assembled pursuant to its contract with the FDA was not an "advisory committee" within the meaning of FACA. We therefore reverse the judgment of the district court.

## I.

In March 1988, the FDA solicited bids for a contract to provide "expert, objective counsel to the [FDA's] Center for Food Safety and Applied Nutrition on general and specific issues associated with the safety of food and cosmetics." *Food Chemical News,* 709 F.Supp. at 6. FASEB bid on the contract, stating that performance would be effected by FASEB's Life Science Research Office, a permanent FASEB department, composed of some ten resident scientists, established to "analyze problems in the life sciences for Federal and private

agencies and organizations." Declaration of Kenneth D. Fisher, Director of FASEB's Life Science Research Organization, at 1. The FDA's solicitation did not refer to implementation through the appointment of expert panels. FASEB, however, proposed the use of "ad hoc groups of knowledgeable experts" to identify and address important issues, and was granted the contract in June 1988.[1]

The contract between FASEB and the FDA provided for the periodic placement of "Task Orders" for services. This case centers on Task Order No. 3, captioned "Emerging Food Safety and Quality Issues for the Next Decade." Task Order No. 3 directed FASEB, "the contractor," to "assemble the pertinent information" on emerging issues by "describing the issue, evaluating the current knowledge, and offering expert counsel on what is needed for FDA to adequately address[ ] the issue." Consistent with FASEB's bid, Task Order No. 3 further specified:

> The contractor shall assemble an expert panel of scientists who have expertise in the areas of life sciences, food sciences and risk assessment or cost benefit analysis. Members of the panel should represent academia, industry, consumer, government and professional associations as appropriate. The panel will prepare a report to the contractor[.]

Next, the Task Order instructed:

> The contractor shall review all comments and information prepared by the panel and prepare a report for submission for FDA.

To start the work Task Order No. 3 required, FASEB selected a group of experts and convened a first meeting of the panel January 11–13, 1989. Part of the meeting was open to the public, part was not. Just before that meeting took place, Food Chemical News, joined by Public Citizen Health Research Group and Center for Science in the Public Interest, commenced this litigation claiming that the ad hoc panel assembled pursuant to Task Order No. 3 should be subject to the public meetings

and other requirements of FACA. Although plaintiffs initially sought a preliminary injunction, the parties eventually agreed that the district court should rule on the matter finally and dispositively, in response to their cross motions for summary judgment.

## II.

Enacted in 1972, FACA responded to a congressional will to assess the need for the "numerous committees, boards, commissions, councils, and similar groups which have been established to advise officers and agencies in the executive branch of the Federal Government." 5 U.S.C.App. II § 2(a); see Public Citizen, 109 S.Ct. at 2562. Congress, through FACA, sought

> to ensure that new advisory committees be established only when essential and that their number be minimized; that they be terminated when they have outlived their usefulness; that their creation, operation, and duration be subject to uniform standards and procedures; that Congress and the public remain apprised of their existence, activities, and cost; and that their work be exclusively advisory in nature.

Public Citizen, 109 S.Ct. at 2562, citing 5 U.S.C.App. II § 2(b).

Among the controls Congress installed, FACA requires each advisory committee to file a charter, 5 U.S.C.App. II § 9(c), and to keep detailed minutes of its meetings, id. § 10(c). Furthermore, a representative of the Federal Government, with authority to order adjournment, must attend advisory committee meetings. Id. § 10(e). The public is entitled to advance notice of advisory committee meetings, and generally to attend them. Id. § 10(a), (d). Subject to Freedom of Information Act limitations, advisory committee documents must be made available for public inspection. Id. § 10(b). Advisory committee membership is to be "fairly balanced in terms of the points of view represented and the functions" the committee performs. Id. § 5(b), (c).

---

1. There were only two bids for the contract. The other bidder did not propose the use of expert panels. Food Chemical News v. Young, 709 F.Supp. 5, 6 (D.D.C.1989).

FACA defines "advisory committee" to mean

any committee, board, commission, council, conference, panel, task force, or other similar group, or any subcommittee or other subgroup thereof ..., which is—

(A) established by statute or reorganization plan, or

(B) established or utilized by the President, or

(C) established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for the President or one or more agencies or officers of the Federal Government, except that such term excludes (i) the Advisory Commission on Intergovernmental Relations, (ii) the Commission on Government Procurement, and (iii) any committee which is composed wholly of full-time officers or employees of the Federal Government.

*Id.* § 3(2). We now turn to the dispositive question whether the Expert Panel on Emerging Issues in Food Safety and Quality During the Next Decade, the panel proposed, chosen, and convened by FASEB to work on Task Order No. 3, falls under FACA as a group or committee the FDA "established or utilized ... in the interest of obtaining advice."

### III.

We start with a key point that is not in dispute: FASEB and its Life Science Research Office do not figure in this case as an "advisory committee" subject to FACA; instead, FASEB falls under the main rule, made clear in the legislative history, that the "Act does not apply to persons or organizations which have contractual relationships with Federal agencies." H.R.Conf. Rep. No. 1403, 92d Cong., 2d Sess. 2, *reprinted in* 1972 U.S.Code Cong. & Admin. News 3508, 3509 (also stating that FACA does not apply to "advisory committees not directly established by or for [Federal] agencies"); *see also* H.R.Rep. No. 1017, 92d Cong., 2d Sess. 4, *reprinted in* 1972 U.S.Code Cong. & Admin.News 3491, 3494 (FACA term "advisory committee" does not include contractor or consultant hired by an officer or agency of the Federal Government). Congress was no doubt mindful that government contractors, unlike the groups that prompted enactment of FACA, *see supra* 330, are subject to procurement regulations designed, or at least intended, to provide checks against waste and other misuses of government resources. *See, e.g.,* 48 C.F.R. §§ 9.500–505 (providing for identification and resolution of organizational conflicts of interest which may impair a contractor's objectivity in performing contract work).

In the district court, plaintiffs successfully urged a distinction between FASEB, the contractor not subject to FACA, and the Task Order No. 3 expert panel. The district court recognized that the contractor proposed the use of an expert panel, chose the panel members, and was to prepare the report conveying the panel's advice. *Food Chemical News,* 709 F.Supp. at 6. Furthermore, the district court comprehended that the contractor's function was not simply to "rubber stamp" the panel's recommendations; instead, FASEB bore ultimate responsibility for determining whether the panel's report was "scientifically valid" and not "otherwise in error." *See id.* at 8; *cf. National Anti–Hunger Coalition v. Executive Comm. of President's Private Sector Survey on Cost Control,* 711 F.2d 1071, 1075–76 (D.C.Cir.1983) (suggesting FACA applies to advisory groups if intermediaries are merely "rubber stamping" the group's recommendations "with little or no independent consideration"). Despite the prominent role of FASEB in proposing, selecting, and reviewing the panel, and FASEB's exemption from FACA, the district court held the expert panel an "advisory committee" within FACA's compass. The district court reasoned that the FDA "established" the panel because the FDA/FASEB contract *required* FASEB to assemble the panel as a means of obtaining the advice sought by the agency. *Food Chemical News,* 709 F.Supp. at 7–8. The district court further found that the FDA had "utilized" the panel because FASEB was to furnish the FDA with the panel's advice, not the contractor's. *Id.* at 8–9.

# 332

## IV.

The FDA urges on appeal that the district court's reasoning has been superseded by the Supreme Court's analysis in *Public Citizen v. United States Dep't of Justice,* — U.S. ——, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989).[2] We agree. *Public Citizen* concerned the advice on potential nominees for federal judgeships that the Department of Justice regularly sought from the Standing Committee on Federal Judiciary of the American Bar Association (ABA Committee). Plaintiffs in that case had requested the names of potential nominees referred by the Department to the ABA Committee, the Committee's reports, and the minutes of its meetings; their court complaint asked for a declaration that the ABA Committee is an "advisory committee" as FACA defines that term.

Plaintiffs in *Public Citizen* conceded that the ABA Committee was not "established" by the President or the Justice Department; they maintained, however, that the Committee was "utilized by" the Executive Branch "in the interest of obtaining advice." *See* 5 U.S.C.App. II § 3(2), set out *supra* pp. 330–331. The Supreme Court rejected that argument. The Court concluded that Congress did not intend that the term "utilized" apply to the Justice Department's use of the ABA Committee. Accordingly, the Court ruled that the Committee was not subject to FACA controls.

Plaintiffs-appellees in this case ask us to read *Public Citizen* as carving out only a "narrow exception" to FACA's "broadly crafted" definition of "advisory committee." *See* Brief for Appellees at 37. We comprehend the *Public Citizen* opinion, however, as limiting FACA to "groups organized by or closely tied to the Federal Government, and thus enjoying quasi-public status." *Public Citizen,* 109 S.Ct. at 2570 (Congress intended to encompass groups established by the Executive Branch or by statute and "offspring" of organizations "created or permeated by the Federal Government").

The Supreme Court's *Public Citizen* opinion initially observed: "There is no doubt that the Executive makes use of the ABA Committee, and thus 'utilizes' it in one common sense of the term." *Public Citizen,* 109 S.Ct. at 2565. The Court then proceeded firmly to reject "a literal reading" of the FACA provision defining "advisory committee." *See id.* at 2566, 2571. "[T]here is considerable evidence," the Court stated, that Congress, in enacting FACA, "sought nothing more than stricter compliance with reporting and other requirements—which *were* made more stringent—by advisory committees already covered by [existing regulations][3] and similar treatment of a small class of publicly funded groups created by the President." *Id.* at 2568 (emphasis in original).

*Public Citizen,* as earlier noted, focused on the term "utilized," but the Court defined that term in relation to the preceding term "established" in the statutory formulation: a group "established or utilized by" an agency. *See* 5 U.S.C.App. II § 3(2), set out *supra* pp. 330–331. In the Court's delineation, as we understand it, "established" indicates "a Government-formed advisory committee," *Public Citizen,* 109 S.Ct. at 2570, while "utilized" encompasses

---

**2.** The FDA also urged that plaintiffs' standing is limited to the "open access" claim and does not extend to other matters, such as compliance with FACA's "balanced membership" requirement. The "open access" claim, however, presents the threshold question whether the expert panel FASEB assembled under Task Order No. 3 qualifies as an "advisory committee" within FACA's coverage. Because we hold that the panel is not within FACA's domain, we have no cause to address the FDA's contentions concerning the limited character of plaintiffs' standing. *See Public Citizen v. United States Dep't of Justice,* — U.S. ——, 109 S.Ct. 2558, 2564 n. 7, 105 L.Ed.2d 377 (1989).

**3.** FACA drew upon Executive Order 11007, 3 C.F.R. 573 (1959–1963 Comp.), which applied when an advisory committee was "formed by a department or agency of the Government in the interest of obtaining advice or recommendations," or "not formed by a department or agency, but only during any period when it is being utilized by a department or agency in the same manner as a Government-formed advisory committee." *Id.; see Public Citizen,* 109 S.Ct. at 2567.

a group organized by a nongovernmental entity but nonetheless so "closely tied" to an agency as to be amenable to "strict management by agency officials." *Id.* at 2568, 2570.[4]

## V.

Applying the analysis in *Public Citizen,* we hold that the expert panel here in question is not an "advisory committee" within the meaning of FACA. The panel was "established" by FASEB, not by FDA. FASEB proposed the panel, and alone selected its members. FASEB also set the panel's agenda, scheduled its meetings, and would have reviewed the panel's work. Similarly, FASEB was the entity that, by contract, directly "utilized" the panel. FASEB is a private organization and government contractor; it does not have "quasi-public status." *See Public Citizen,* 109 S.Ct. at 2570. The panel was to be managed by FASEB; it was "not amenable to [any] management by [FDA] officials," or "by [any] semiprivate entity the Federal Government helped bring into being." *See id.* at 2568, 2571. The final report, under the FDA contract and Task Order, was to be prepared and presented not by the panel but by FASEB.

### Conclusion

As superseding Supreme Court instruction in *Public Citizen* requires, the decision of the district court declaring the Expert Panel on Emerging Issues in Food Safety and Quality During the Next Decade an "advisory committee" subject to the requirements of FACA is

*Reversed.*

---

**4.** The Court mentioned in passing that "utilized by" expanded the term "established" so as to make FACA applicable to advisory committees formed by "quasi-public organizations such as the National Academy of Sciences." *Public Citizen,* 109 S.Ct. at 2570. We note, but express no opinion on, the position pressed by the National Academy of Sciences, in an amicus brief in this case, that FACA's legislative history evidences a general intent to exclude from coverage the committees of the Academy. *See* Brief of the National Academy of Sciences at 10–18 (relying on *Lombardo v. Handler,* 397 F.Supp. 792, 798–800 (D.D.C.1975), *aff'd without opinion,* 546 F.2d 1043 (D.C.Cir.1976), *cert. denied,* 431 U.S. 932, 97 S.Ct. 2639, 53 L.Ed.2d 248 (1977), which concluded that Congress did not intend FACA to apply to a committee created by the Academy pursuant to an Academy–EPA contract).