**ANIMAL LEGAL DEFENSE FUND, et al., Appellants**

v.

**Donna SHALALA, Secretary of the Department of Health and Human Services, et al., Appellees.**

No. 94–5322.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 28, 1995.

Decided May 9, 1995.

Rehearing Denied July 13, 1995.

Eric R. Glitzenstein, Washington, DC, argued the cause for appellants. With him on the briefs was Valerie J. Stanley.

Patricia A. Millett, Atty., U.S. Dept. of Justice, Washington, DC, argued the cause for the federal appellees. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., Eric H. Holder, Jr., U.S. Atty., Leonard Schaitman and Mark B. Stern, Attys., U.S. Dept. of Justice.

Richard A. Meserve, Washington, DC, argued the cause for appellee Nat. Academy of Sciences. With him on the brief were John F. Duffy, James R. Wright and Audrey Byrd Mosley.

Before: EDWARDS, Chief Judge, WALD and RANDOLPH, Circuit Judges.

Opinion concurring in the result filed by Circuit Judge WALD.

HARRY T. EDWARDS, Chief Judge:

In May of 1994, the Animal Legal Defense Fund and two other organizations dedicated to the promotion of animal welfare (collectively "ALDF") brought this action in District Court under the Federal Advisory Committee Act, seeking to gain access to the meetings of a committee ("Revision Committee") created by the National Academy of Sciences to revise the *Guide for the Care and Use of Laboratory Animals*. In October of 1994, ALDF filed a motion for a preliminary injunction, which it subsequently amended, seeking to enjoin further work by the Revision Committee. The District Court denied the preliminary injunction on the ground that ALDF failed to show a likelihood of success on the merits, and ALDF appealed that decision.

We now dismiss ALDF's appeal as moot. On February 24, 1995, four days before oral argument in this appeal, the Revision Committee conducted its final meeting on the *Guide for the Care and Use of Laboratory Animals*. This occurrence rendered moot the subject of this appeal, *i.e.,* the challenge to the trial court's denial of a preliminary injunction, because there were no more meetings of the Revision Committee to enjoin. The parties now lack a legally cognizable interest in the determination whether the preliminary injunction was properly denied—the sole question before this court. Accordingly, we dismiss this appeal as moot, vacate the District Court's order, and remand the case for consideration of the merits.

## I. BACKGROUND

### A. *FACA*

Congress enacted the Federal Advisory Committee Act ("FACA" or "Act"), 5 U.S.C. app. §§ 1–15 (1988 & Supp. V 1994), in 1972, in an effort to assess the need for the "numerous committees, boards, commissions, councils, and similar groups which have been established to advise officers and agencies in the executive branch of the Federal Government." *Id.* § 2(a); *see also Public Citizen v. Dep't of Justice,* 491 U.S. 440, 445–46, 109 S.Ct. 2558, 2562–63, 105 L.Ed.2d 377 (1989); *Food Chemical News v. Young,* 900 F.2d 328, 330 (D.C.Cir.1990).[1] Under FACA, an "advisory committee" includes "any committee . . . which is . . . established or utilized by one or more agencies, in the interest of obtaining advice or recommendations for . . . one or more agencies or officers of the Federal Government." 5 U.S.C. app. § 3(2).

Those committees falling within the compass of the statutory definition of an "advisory committee" must adhere to FACA's provisions, which, among other things, require an advisory committee to file a charter, *id.* § 9(c); to provide the public with advance notice of its meetings, *id.* § 10(a)(2); to allow the public to attend its meetings, *id.* § 10(a)(1); to keep detailed minutes of its meetings, *id.* § 10(c); and, subject to Freedom of Information Act limitations, to make its documents available for public inspection, *id.* § 10(b). The Act also requires a representative of the Federal Government with authority to adjourn such meetings, to be in attendance, *id.* § 10(e), and prescribes that the membership be "fairly balanced in terms of the points of view represented and the functions" performed by the committee, *id.* § 5(b)(2).

### B. *Proceedings Below*

On October 6, 1992, the National Academy of Sciences ("NAS") submitted a grant proposal to the National Institutes of Health ("NIH") to revise the *Guide for the Care and Use of Laboratory Animals* ("*Guide*"). The

---

1. As the Supreme Court noted in *Public Citizen,* Congress sought

    to ensure that new advisory committees be established only when essential and that their number be minimized; that they be terminated when they have outlived their usefulness; that their creation, operation, and duration be sub-

ject to uniform standards and procedures; that Congress and the public remain apprised of their existence, activities, and cost; and that their work be exclusively advisory in nature.

*Public Citizen,* 491 U.S. at 446, 109 S.Ct. at 2562–63 (citing 5 U.S.C. app. § 2(b)); *see also Food Chemical News,* 900 F.2d at 330.

*Guide,* first published in 1963 and last updated in 1985, contains general guidelines for monitoring the care of laboratory animals and providing appropriate veterinary care and physical accommodations for those animals. On August 12, 1993, the Department of Health and Human Services ("HHS") approved the grant for the revision of the *Guide,* and, one month later, NAS assembled a team of fifteen individuals to serve on the Revision Committee. The Revision Committee met a number of times: on November 30, 1993, the committee held its first meeting; on December 1, 1993, February 2, 1994, and February 4, 1994, the committee held three public meetings; the committee met again on November 2–4, 1994, and the final meetings of the committee were held on February 22–24, 1995.

On May 6, 1994, ALDF brought suit in District Court, alleging that the Revision Committee was an "advisory committee" under FACA, and that the committee had failed to comply with the mandates of the Act. On October 14, 1994, ALDF moved for a preliminary injunction to bar appellees from utilizing the Revision Committee until they had complied with FACA. *See* Plaintiffs' Motion for Preliminary Injunction, *ALDF v. Shalala,* (No. 94cv1003) (filed Oct. 14, 1994). Appellants point out in their brief that, at the hearing on the motion for a preliminary injunction, they stressed to the trial court that they were not seeking any relief which would preclude the committee from meeting or which would in any other way disrupt the committee's work. Brief for Appellants at 15. Rather, they "sought an order that would simply afford them access to the meeting." [2] *Id.* On October 25, 1994, the District Court held a hearing on the preliminary injunction and denied appellants' motion.

The District Court analyzed the request for a preliminary injunction under the test articulated by this circuit in *Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.

1977), and determined that ALDF satisfied three of the four factors justifying a preliminary injunction: ALDF would suffer irreparable harm if the preliminary injunction was not granted because it would be denied access to the Revision Committee's upcoming meeting; the harm to appellees would be "minimal harm at most" if an injunction were granted; and the public interest would be furthered by the public's attendance at the Revision Committee's meetings. Tr. of Hearing (Oct. 25, 1994) at 54–57, *reprinted in* Joint Appendix (J.A.) at 382–85. The District Court, however, denied the request for preliminary injunction on the ground that ALDF failed to demonstrate a reasonable likelihood of success on the merits of its claim. *Id.* at 57, *reprinted in* J.A. 385.

Appellants appealed the denial of the preliminary injunction and moved in District Court for an injunction pending appeal, which the District Court granted in part, enjoining appellees from "destroying any documents which pertain to the work of the committee." *ALDF v. Shalala,* No. 94cv1003, slip. op. at 2 (D.D.C. Oct. 31, 1994). Appellants filed another motion for an injunction pending appeal in this court, and on November 1, 1994, a panel of this court granted the motion in part, ordering NAS's Revision Committee to "preserve a record, through minutes or other suitable means," of the November meetings pending disposition of the appeal. *ALDF v. Shalala,* No. 94–5322, slip. op. at 1 (D.C.Cir. Nov. 1, 1994). The court also established an expedited briefing and argument schedule.

## II. ANALYSIS

The only issue in this appeal is whether the District Court properly denied appellants' motion for a preliminary injunction. Appellants make clear that at the hearing on their motion for a preliminary injunction, they were not seeking relief which would preclude the Revision Committee from meet-

2. This comports with the District Court's understanding of ALDF's request at the hearing on the preliminary injunction. The trial judge noted:
   As of today the plaintiffs have substantially modified their request ... to be requesting that the preliminary injunction bar defendants from

performing any further work on the revision of the *Guide* unless the particular provision of the Federal Advisory Committee Act allowing public access to the meetings is complied with. Tr. of Hearing (Oct. 25, 1994) at 54, *reprinted in* Joint Appendix at 382.

ing or would in any way disrupt its work. Brief for Appellants at 15. Rather, the relief they "sought [was] an order that would simply afford them access to the meeting." *Id.* Because the Revision Committee has had its final meeting and no further meetings are contemplated,[3] this appeal is now moot, for there are no more meetings for appellants to attend. The parties no longer have a legally cognizable interest in the determination of whether the preliminary injunction was properly denied, *see, e.g., Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 1183, 71 L.Ed.2d 353 (1982) (*per curiam*) (appellee's claim to *pre-trial* bail was moot once he was convicted), so we are constrained to dismiss the appeal, *see, e.g., National Kidney Patients Ass'n v. Sullivan,* 902 F.2d 51, 54 (D.C.Cir.1990) (*per curiam*) (dismissing appeal as moot because preliminary injunction expired while on appeal).

This appeal presents another instance in which "one issue in a case has become moot, but the case as a whole remains alive because other issues have not become moot." *University of Texas v. Camenisch,* 451 U.S. 390, 394, 101 S.Ct. 1830, 1833, 68 L.Ed.2d 175 (1981) (finding challenge to injunction ordering university to provide interpreter for deaf student moot since university complied and student graduated, although issue as to who should bear cost remained to be decided). In this case, in their pursuit of a preliminary injunction, appellants sought only to gain entry to the meetings of the Revision Committee. The meetings have concluded, so an injunction cannot afford the relief that was sought. However, the underlying dispute, whether the Revision Committee is an "advisory committee" under FACA and whether it violated FACA's mandates, remains alive. Therefore, in dismissing this appeal on grounds of mootness, we vacate the District

Court's order denying a preliminary injunction, and remand the case for consideration of the merits. *See id.; National Kidney Patients Ass'n,* 902 F.2d at 54–55.

We note that our determination of this appeal does not adversely affect any relief that might be available to appellants should they succeed on the merits.[4] The National Academy of Sciences has made clear that it intends to preserve the records of the Revision Committee's meetings until the final resolution of this action. *See* Suggestion of Mootness at 3, *ALDF v. Shalala,* No. 94–5322 (filed Feb. 27, 1995). The District Court had enjoined appellees "from destroying any documents which pertain to the work of the committee" pending appeal. *ALDF v. Shalala,* No. 94cv1003, slip. op. at 2 (D.D.C. Oct. 31, 1994). This court had ordered that the "National Academy of Sciences' committee revising the [*Guide*] shall preserve a record, through minutes or other suitable means, of the meeting to be held November 2–4, 1994, pending disposition of this appeal." *ALDF v. Shalala,* No. 93–5322 (D.C.Cir. Nov. 1, 1994). Although the disposition of this appeal terminates both orders, NAS maintains that it has complied with those orders. NAS has also advised the court that it has "voluntarily taken minutes of the committee's February 1995 meeting," and assures that "it will voluntarily preserve all existing minutes until this action is finally resolved." Suggestion of Mootness at 3 n. 3, *ALDF v. Shalala,* No. 94–5322 (filed Feb. 27, 1995). We take the Academy at its word and presume that the Revision Committee meeting documents will be preserved pending final resolution of this action. On remand, the District Court may of course issue appropriate orders to ensure the *status quo.*

---

3. NAS has explained that the Revision Committee completed its review of the draft report on February 24, 1995, and does not contemplate any further meetings. Suggestion of Mootness at 2 n. 2, No. 94–5322 (filed Feb. 27, 1995). NAS contends that "[a]fter changes are made in the draft, it will be subjected to an internal report review in accordance with established Academy procedures and ... [o]nce the review process is completed, the final report will be released to the public by the Academy." *Id.*

4. If appellants prevail on the merits, they may be entitled to a permanent injunction prohibiting appellees from "publishing, employing or relying" on the Revision Committee's work until the terms of FACA have been satisfied. *Alabama–Tombigbee Rivers Coalition v. Dep't of Interior,* 26 F.3d 1103, 1105, 1106–07 (11th Cir.1994).

## III.  CONCLUSION

We dismiss this appeal as moot. We vacate the District Court's order denying ALDF's motion for a preliminary injunction and remand the case to the District Court for consideration of the merits.

*So ordered.*

WALD, Circuit Judge, concurring in the result:

The panel holds that the animal rights organizations' (collectively, "ALDF") appeal is "moot" because appellants "sought only to gain entry to the meetings of the Revision Committee," Majority Opinion ("Maj. op.") at 366, and the meetings have now ended. Because I do not think that the relief requested by appellants was so limited, I disagree with the majority's conclusion of mootness. Nonetheless, I would affirm the denial of a preliminary injunction because, as the district court held, appellants have failed to demonstrate the required "likelihood of success on the merits." *See Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977) (*"WMATC"*).

Appellants initially requested a preliminary injunction preventing the federal defendants from "utilizing [the] Committee ... until they comply with the Federal Advisory Committee Act ('FACA'), 5 U.S.C.App. II *et seq.*" Plaintiffs' Motion for Preliminary Injunction, *ALDF v. Shalala* (No. 94cv1003) (Oct. 14, 1994), at 1–2. They enumerated the relief that they believed the district court should grant to ensure compliance with FACA, including ordering the federal appellees to:

1.  Provide timely and complete notice of each and every future meeting of this Committee by publishing the same in the Federal Register;

2.  Provide plaintiffs and the public with access to each and every meeting of the Committee ...;

3.  Make available to the plaintiffs and the public records, reports, transcripts, minutes, appendices, working papers, drafts, studies, agendas, or other documents which were made available and are going to be made available to or are prepared by the Committee;

4.  Provide plaintiffs and the public with detailed minutes of each meeting of the Committee that has taken place to date, and each future meeting ...;

5.  Take all steps necessary to ensure that the membership of the Committee is fairly balanced....

Plaintiff's Proposed Order for Preliminary Injunction, *ALDF v. Shalala* (No. 94cv1003) (Oct. 14, 1994), at 2–3. The majority's view of this case is predicated on the notion that appellants renounced the entirety of this request for relief at the hearing before the district judge—except that they be allowed "to gain entry to the meetings of the Revision Committee." Maj. op. at 366.

My examination of the hearing transcript does not reveal so broad a renunciation. The only relevant exchange at the hearing concerned appellants' request that the federal appellees be required to publish a notice in the Federal Register before each meeting of the Committee. The attorney for the National Academy of Sciences ("NAS") stated that

there are particular problems with the issuance of a preliminary injunction at this stage. The [appellants' proposed] preliminary injunction ... requires the publication of a notice in the Federal Register. It is going to take a couple of weeks anyway.

He opined that the "November meeting would [therefore] have to be canceled." Transcript of Hearing (Oct. 25, 1994), at 42–43, *reprinted in* Joint Appendix ("J.A."), at 367–68. Counsel for the animal rights organizations responded:

[W]ith respect to the November meeting that's coming up plaintiffs [propose] if your Honor is thinking of granting our motion for preliminary injunction fashioning the order in such a way ... to allow the chartering of that committee to occur after the committee meets but we would very much like to have that committee meeting open to the public. That way the November meeting could go forward and the process of chartering it, which is the most time-consuming part, could occur later.

*Id.* at 369–70. No more was said about the scope of relief requested by appellants.

While this statement by plaintiffs' counsel apparently acquiesced to a preliminary injunction that would allow chartering the November meeting by publication in the Federal Register *after* the meeting took place, it is not susceptible to the interpretation that it rescinded appellants' entire request for relief except insofar as permitting them to "gain entry to the meetings of the Revision Committee." Maj. op. at 366. Moreover, the statements the majority cites from appellants in their brief and the district court at the hearing, Maj. op. at 365 & n. 2, are entirely consistent with a less extreme construction of the exchange. Appellants stated only that "they were not seeking any relief which would preclude the Committee from meeting on November 2–4 or would in any other way disrupt the Committee's work"; that does not mean they intended to abandon their request that the Committee provide public access to their minutes, records, reports, working papers, and other documents—as, indeed, a committee covered by FACA is affirmatively required to do in every case. *See Food Chemical News v. HHS*, 980 F.2d 1468 (D.C.Cir.1992). The district court did say at the hearing that appellants sought only "public access to the meetings"; I assume, however, that the judge employed the term "access" to encompass both the public's FACA right to be physically present at Committee meetings and its right to inspect the minutes and other documents produced by the Committee at those meetings—*see* FACA, 5 U.S.C.App. II § 10 (providing for both physical and documentary "access")—since the court had appellants' written request for both kinds of "access" before it.

I therefore conclude that appellants rescinded their request that the preliminary

injunction require the federal appellees to charter the Committee in the Federal Register before the November meeting, and that their request that the preliminary injunction allow them to attend meetings that have already been held is moot.[1] I believe, however, that there remains a live controversy concerning the propriety of the district court's denial of appellants' request for a preliminary injunction insofar as they asked that it provide them access to the Committee's work-product.

It is true, as the majority states, that this information will be "available to appellants should they succeed on the merits" in a final judgment. Maj. op. at 366. But of course it is almost always the case that relief requested in a preliminary injunction would later be available should the party "succeed on the merits." The traditional question in a preliminary injunction proceeding is whether there is a critical difference between relief now and relief later—the "irreparable injury" inquiry. *WMATC*, 559 F.2d at 843.

In the FACA context particularly, there may be a big difference between relief now and later. As the Eleventh Circuit has stated,

> [b]ecause FACA's dictates emphasize the importance of openness and debate, the timing of [public] observation and comment is crucial to compliance with the statute. Public observation and comment must be contemporaneous with the committee process itself [citation omitted]. If public commentary is limited to retrospective scrutiny, the Act is rendered meaningless.

*Alabama–Tombigbee Rivers Coalition v. Dep't of Interior*, 26 F.3d 1103, 1106 (11th Cir.1994). This would appear to apply in our case. Presumably, appellants wish to let the

---

1. After oral argument, appellants informed the panel that "the Chairman of the Committee [planned to] convene an editorial session with four members of the Committee and the Academy staff" at the end of the first week in May, 1995. Appellants' Letter, *ALDF v. Shalala*, No. 94–5322 (Apr. 26, 1995) ("Letter"), at 2. FACA defines "committee" as any "committee, board, commission, council, conference, panel, task force, or other similar group, *or any subcommittee or subgroup thereof.*" 5 U.S.C.App. II § 3(2)

(emphasis added). Appellants thus suggest that this case is not moot because a "subgroup" of the Revision Committee continues to meet "several months after NAS's suggestion of mootness." Letter at 2. Although this argument may indeed provide an additional reason to doubt the appeal's "mootness," I do not reach it because I think this appeal presents a live controversy regardless of whether "committee" meetings continue to take place.

sun shine in on the Revision Committee's decisionmaking processes now, while the Committee is still "deciding," not after the revised guide is issued, which is precisely what FACA was designed to help them do. In any event—however one might rule on the merits of the "irreparable injury" inquiry— surely the question is not "moot."

I would nonetheless deny the appeal because I agree with the district court that appellants have failed to demonstrate the "likelihood of success on the merits"—*see WMATC*, 559 F.2d at 843—necessary to obtain relief in the form of a preliminary injunction.